159 So. 248

## SHOWS et al. v. BRUNSON et al.
### 4 Div. 756.

Supreme Court of Alabama.
Jan. 24, 1935.

Rehearing Denied Feb. 21, 1935.

Ira B. Thompson, of Luverne, for appellees.

Powell & Hamilton, of Greenville, for appellants.

BOULDIN, Justice.

Appellants, H. R. and T. W. Shows, sued P. H. McQueen, Houston Foster, Annie G. Brunson, W. R. McNeill, A. J. Ryals, and O. R. Ryals upon a joint and several promissory note. The original complaint claimed the full amount of the note, $2,930.02. An amended count, on which the trial was had, claimed $1,465.01, being the first installment;

due December 31, 1931; the second installment for like amount not having matured at the time the original suit was begun.

The defendants, other than McQueen and Foster, interposed a special sworn plea (A-1), alleging: "That said note which is the basis of this suit has been materially altered since its execution by them and without their authority or assent in this: That said note was payable to the Bank of Luverne and not to H. R. & T. W. Shows: and that the said note was for the sum of Fourteen Hundred Sixty-Five & 1/100 Dollars, and not for the sum of Twenty-Nine Hundred Thirty & 2/100 Dollars."

The evidence on the trial was directed to the issue presented by this plea, resulting in verdict and judgment in favor of the four defendants interposing such defense.

Several rulings on the admission of evidence are presented for review.

In order to give an intelligible treatment of the several rulings, some outline of the case is deemed proper.

The original note is sent up for our inspection. A printed form was used in which "Bank of Luverne" appeared as payee. The blanks are filled in by typewriting. The pertinent parts of the note are here reproduced:

"$2930.02        Luverne, Ala. Dec. 31st, 1930.

"On the Demand day of ——, 1932, for value received, I promise to pay to ~~BANK OF LUVERNE,~~ H. R. & T. W. Shows or order, the sum of $ WITH INTEREST FROM DATE Two thousand nine hundred thirty ......02/100 DOLLARS. (Here follow printed waiver of exemptions, mortgage clause, etc., not here involved.)

"The above amount to be paid as follows $1465.01 payable Dec. 31st, 1931, and $1465.01 Dec. 31st, 1932."

We have indicated the typewritten portions by underscoring. Defendants contend the only typewritten matter in the note at the time of execution was that underscored with double line; that the words "BANK OF LUVERNE" were not then Xed out.

It is not contended by either side that the note was signed with blanks to be later filled in. Plaintiffs contend that the note, as it now appears, was filled out by plaintiff, H. R. Shows, and handed to McQueen, the principal maker, for execution with sureties; while litigating defendants contend that the payee was "BANK OF LUVERNE" and the amount payable $1,465.01 when executed by them.

Without question the consideration for the note was the price of certain county warrants, or officers' script on the fine and forfeiture fund of Crenshaw county.

P. H. McQueen, as sheriff, had become indebted to the county. It was agreed that the county would accept such warrants or script at face value on such indebtedness. Evidence tended to show the balance then due the county was $2,930.02, the amount of the note sued upon. McQueen, as a witness for plaintiffs, testified the note was filled out as it now appears when he obtained the signatures of the other parties as sureties. On cross-examination he was asked what those warrants were worth at that time.

The overruling of plaintiffs' objection is the first ruling presented in argument.

While the evidence presented to that time did not clearly disclose the relevancy of such testimony, some later evidence tended to show that during the negotiations between McQueen and plaintiffs, as dealers in such claims, it was understood he should have warrants or script at 50 cents on the dollar, which would be acceptable to the county at face value. The market value of such paper was, therefore, a legitimate inquiry on an issue as to whether the original note signed by defendants was filled out on a basis of 50 cents on the dollar, or for full face value, or substantially so.

Plaintiffs' version was that the county warrants were sold at prices which had been paid for them, with 8 per cent. interest thereon; and the total face value of the warrants turned over to McQueen was approximately $3,103.08.

H. S. Broom, a witness for defendants, testified that as public examiner of accounts, he participated in the proceedings to settle the balance due from the sheriff, McQueen, to the county; that he saw a note in McQueen's hands filled out as per the defendants' plea; that the instrument was unsigned at the time; that he could not swear it was the same paper now sued upon, but in his best judgment it was.

The fact that the paper seen in McQueen's hands was unsigned is stressed as a ground of objection to the witness giving his best judgment.

Whether witness had such observation of the document as to enable him, with other circumstances known to him, to form a judgment on the matter, was for the witness to determine. That the document was then unsigned goes to the weight of his testimony.

In the absence of evidence that McQueen ever had any other than this document filled

out for signature, we think the admission of this evidence was without error.

W. F. Ryals, witness for defendants, testified he was present when his son, O. R. Ryals, signed the note; that this was in the open, the paper being placed on the fender of an automobile; that witness looked over his son's shoulder while he was signing; that the note was then payable to Bank of Luverne; that plaintiffs' names had not been filled in; that the amount was then $1,465.-01, but is double that now.

The record recites the following in course of the cross-examination of this witness:

"Witness was here asked the following question:

" 'You didn't read the note, you just glanced at it, didn't you, Mr. Ryals?'

"Witness answered: 'Just looked over it and saw what it was.'

"Continuing the witness testified as follows:

" 'I do not wear glasses all the time. I don't remember whether I had my glasses with me that day. I think I did. In the light I can read without my glasses—I am not positive about that—not positive whether I had my glasses on.'

"Witness was here asked the following question:

" 'You don't wear your glasses except when you want to read?'

"He answered: 'Yes, sir, but I can read out in the light without them.'

"Witness was then asked the following question:

" 'But you can tell what was on there in this Court room?'

"He answered: 'Not good, I can't.'

"Plaintiffs' attorney here requested the witness to go over by the window in the Court House which was by the jury. The witness went as requested. Plaintiffs' attorney then made the following request of the witness: 'Now read that note to the jury, please, sir.'

"Thereupon the attorney for the defendants objected, stating at the request of the Court the following grounds of objection:

" 'It don't show the same conditions—has nothing to do with it. He says he doesn't know whether he had his glasses or not and he is three or four years older and he might not be able to read it now. It is not under similar circumstances.'

"Thereupon the Court sustained the objection. Attorneys for plaintiffs then stated to the Court: 'He says he can read in the light and I am asking him to read this without his glasses.' Thereupon the Court said: 'I sustain the objection.' To this action of the Court the plaintiffs duly and legally excepted. In connection with this the attorney for the plaintiffs said:

" 'And we offer the testimony of this witness showing that he didn't know whether he had his glasses on or not, and stating that he could read in the light without his glasses, and we now ask him to read this note as it stands, the printed parts, the typewritten parts of it.'

"Thereupon the defendants objected. The Court sustained the objection and to this action of the court the plaintiffs duly and legally excepted.

"It was day time when the above occurred and the window was a large window in the Court House and open at the time."

It is not at all clear that the witness was asked to read the typewritten parts alone. The note contained several lines closely printed in small type. An attempt to read the note, including this, would shed but little light on the question of his ability to see what was filled in and what was blank at the time of signing. If limited to the typewritten portions, and to the "BANK OF LUVERNE" in large letters, the evidence might have afforded some test as to whether he could see as well as he claimed, but not as to whether he did or did not have on glasses at the time; nor could such test go far to show whether witness could discern the blanks from the printed or typewritten portions of the document. Whether the light at the open window was equal to the light at the time in question is not clear.

■ Experiments or tests of this character in open court are usually within the discretion of the trial judge, guided by a sound judgment as to whether the result will be sufficiently relevant and material to warrant such procedure. 22 C. J. p. 790, § 899.

Similarity of conditions, and a test that will go to the substantial question in hand, should appear. This court has disapproved different classes of experiments. Alabama Great Southern Railroad Co. v. Collier, 112 Ala. 682, Headnote 2, 14 So. 327; United States Cast Iron, Pipe & Foundry Co. v. Granger, 172 Ala. 546, 55 So. 244.

■ We are not prepared to hold the trial court abused his discretion in this instance.

■ Evidence of the defendant A. J. Ryals that McQueen, when he brought the paper

to be signed, said that he had made arrangements with the Bank of Luverne to help him, was admissible as a declaration out of court at variance with McQueen's testimony, for purposes of impeachment; no objection for want of predicate being interposed.

■ The admission of the testimony of Houston Foster, a maker of the note who did not join in the litigation, to the effect that Mr. McQueen while seeking signatures on the note told him the amount was less than $1,500, was without error for like reason, and maybe because part of the res gestæ.

Plaintiffs' evidence tended to show their office was in the rear of the same building occupied by the bank, that they kept no printed forms of notes for this business, and often used this form of bank note, striking out the bank as payee, and inserting the firm name.

Plaintiffs then offered to produce and offer in evidence other notes of like tenor.

■ The sustaining of objection to such further evidence was without error. It would tend to open up collateral issues. No complaint could be had of plaintiffs' use of this form of note. The issue was on its condition when signed by these defendants. Winter & Loeb v. Pool, 100 Ala. 503, Headnote 4, 14 So. 411.

Appellants insist there was reversible error in giving certain written charges for defendants, numbered A, A-2, B-2, and 3.

■ These charges are subject to criticism in that they are too broad, predicating a verdict on a "material change, or alteration," not limiting it to changes set up in the plea; and on the further ground that the charges do not define "material change," but leave it open to the jury.

In the court's oral charge, he had definitely mentioned the "material changes" set up in the plea and instructed the jury thereon. We are not impressed there is any probability the jury were misled into founding their verdict on some other alteration in the note deemed by them to be material.

The evidence in support of the contention that the payee had been changed, and the amount doubled, was by the same witnesses, and quite as strong as that touching any other alteration presented by the evidence.

■ Charge A is further criticized for directing a verdict for defendants, instead of for the litigating defendants. The record definitely discloses the jury was not misled by this direction. McQueen and Foster had not pleaded. The verdict was limited to the four defendants who did interpose the plea. The other two were not mentioned in the verdict. This was in exact accordance with the form of verdict given by the trial court to which no objection was made.

■ It is further insisted that the charges would call for a verdict for defendants whether the alterations were made by the plaintiffs or by some third party without their knowledge or consent.

True, if a paper is altered by a third person after execution, the alteration does not affect the instrument. The alteration is stricken, and the instrument remains of force as originally executed. But this can have no application to the instant case. The suit is on the instrument as altered, if so it was. Whether the plaintiffs were responsible for any alteration or not, the defendants are not to be bound by an alteration made by any one after execution and without their consent.

■ Finally, it is argued these charges are erroneous in that they call for a verdict for defendants who may have consented to an alteration. While the charges in defining the law refer to the matter of consent to an alteration, there is no evidence, nor tendency of evidence, to show any assent to an alteration of the instrument after execution. The court, if requested, could well have given an affirmative charge for these appellees on that question. The sole issue in the evidence was whether there had been an alteration after execution. In such case the language of these charges touching assent could work no injury to plaintiffs. We find no error to reverse in any of these charges.

We have carefully considered the motion for a new trial upon the ground that the verdict is not supported by the evidence, or that the great weight of the evidence is opposed to the verdict. The evidence is direct and positive on both sides; is sharply in conflict. The result turns much on the credibility of the witnesses.

A discussion of this testimony in the light of all the circumstances would serve no good purpose. Indulging the well-known presumption in such cases, our conclusion is there is no sufficient ground for this court to disturb the verdict.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.