## RICHARDSON v. IMPEY.

### No. 2858.

Court of Civil Appeals of Texas. Beaumont.

May 7, 1936.

Rehearing Denied May 13, 1936.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellant.

Campbell, Murphy & Cochran and Z. L. Foreman, all of Livingston, for appellee.

WALKER, Chief Justice.

On the 19th of February, 1934, appellee, J. C. Impey, was injured in a collision between a truck he was driving and a truck and trailer belonging to appellant, Harvey Richardson, which was loaded with a "boiler feed" unit. This was a suit by him against appellant for injuries suffered by him in the collision, and on trial to a jury his damages were assessed at $15,107.50. One ground of negligence, with proximate cause, pleaded, by appellee, submitted to the jury, and found in his favor, was as follows: "Plaintiff would further show to the Court that the trailer attached to said truck on which said load was then being carried was not properly aligned with said truck, and the wheels of said trailer were not tracking the wheels of said truck as the same should have, and by reason thereof the left wheel of said trailer tracked much to the left of the tracks made by the rear wheels of said truck; thus causing the trailer wheels to extend approximately two feet more to the left side than did the truck wheels, or to the center of the road when said truck was being driven on the right-hand side thereof." Appellant has regularly prosecuted his appeal from the judgment entered in appellee's favor on the jury's verdict.

■ One point at issue was the identification of the boiler feed unit. A Mr. Lee, witness for appellant, testified that on the day of the accident he passed a trailer and truck loaded with a boiler feed unit about two and one-half miles from the place of the collision, and that the next morning he saw a boiler feed unit near the place of the collision which he identified as being the same boiler feed unit he saw the day before. His identification of this machinery was positive and, therefore, not subject to the objection that it "was a conclusion of the witness."

■ One point of identification relied upon by Mr. Lee was that the feed unit he saw the day before the accident had a blue tool box and the one he saw the next morning also had a blue tool box. Controverting this testimony, appellant proposed to prove by Mr. Ed Richardson, the driver of the truck, but the testimony was excluded, that about 75 per cent. or 80 per cent. of boiler feed units used in the oil fields of the United States had blue tool boxes. This ruling was not error. There was no testimony that any other feed unit was seen near the place of the collision the day of the accident, the day before the accident, or the day following the accident, or that such a boiler feed unit was ever seen on that road before. The excluded testimony was too indefinite and general to have any probative force.

■ The witness Lee also testified that he passed the boiler feed unit about two miles and a half from the place of the accident; that the trailer was defective and was not "tracking" the truck, but "tracked" two or three or four feet too far to the left. This testimony was not subject to appellant's objection that the place where the witness saw the truck and trailer was so far from the place of the accident that it was without probative force as to the condition of the trailer at the time of the accident. The testimony was without dispute that from the place where Mr. Lee passed the truck and trailer to the place of the accident the driver did not stop his truck, did not readjust his load, and made no effort whatever to cure the defect that caused the defective tracking; on this testimony it was a reasonable deduction for the jury that the trailer continued to "track" too far to the left.

■ The pipes on the boiler feed unit extended over the side of the trailer and truck into the road. The court refused to permit appellant to prove by the owner that he contracted with appellant to transport this machinery as it was assembled. This testimony was offered on the theory that the act of the owner in contracting that the machinery be transported as assembled was the sole proximate cause of the injury. This testimony did not raise that issue. Appellant's act in transporting this machinery was voluntary, and he was responsible for his negligence in loading and transporting it.

■ The testimony of Louis Galloway that the road where the accident occurred was a designated state highway was not subject to the objection that it was secondary and that the best evidence was a certi-

fied copy of the records making the designation.

▮ Appellant assigned error against the following argument by appellee's counsel in addressing the jury:

(a) Mr. Fox Campbell said:

"Mr. Foreman tells you he was County Attorney at the time. Just consider the facts; the position those men had. *Their familiarity with examination of matters, their carefulness in examining matters in comparison with others who are not interested in just a casual observer. * *

"Mr. Ingle had no idea that anything happened. He had no reason than curiosity in getting out. * *

"That those parties who went there for the purpose of making a careful investigation of it would likely be more correct in their recollection of what actually existed at the time than some one that was casually there. I say it with all due regard to some one that was there."

Mr. Foreman was the county attorney of Polk county, Mr. Holiday was the sheriff, and a Mr. Billie McElroy was a special ranger. After the accident these three officers went to the place of the accident and made an investigation. They took a wire and made measurements of distances, carefully checked the ground to determine where the collision occurred with reference to the location in the road, and carefully examined the truck driven by Ed Richardson, together with the load it was carrying, the protruding pipe, the carbide on the road, and the broken glass. Detailed testimony was offered on all these matters. A Mr. Ingle and Mr. and Mrs. McCollum also testified as to the circumstances surrounding the place of the accident. On several points there was a conflict between their testimony and that of the officers. This statement supports Mr. Campbell's argument.

(b) Again Mr. Campbell said: "* * * Why imagine you or I putting ourselves in there and drawing the deductions or that we would. Anything like that—happening suddenly like that—a man couldn't describe it hardly. When it hit that rear view mirror and went to throwing that glass in his face * * *." This argument was not error. Appellee testified that the truck he was driving had a rear view

mirror located about eight or ten inches from the top of the cab; that the mirror was on a stem fastened to the left door of the truck. He testified further that something happened to the mirror as he was passing appellant's truck, that something struck it and that evidently the same object struck his arm, and that he did not recall how far he drove after being struck because he was excited and suffering pain. This testimony warranted the deduction counsel attempted to draw, and his statement to the jury "putting ourselves in there and drawing the deductions" was not improper.

(c) Again Mr. Campbell said: "I submit to you Gentlemen, in all fairness—in all reason—when people pass you on the road; when he sees the others there isn't any man in the world that could tell you exactly where the center of the dirt road is. If he is over farther where everything can pass him then he is not guilty of negligence. If he does what any ordinary prudent man would have done there—it takes a failure to do that to constitute negligence." This argument was objected to on the ground that it "was in the teeth of the court's charge," and that is the only point made against the argument by the assignment of error and by the proposition. Of this argument appellant himself says: "Mr. Campbell's argument does not straight-out contradict any part of the court's charge."

The tenth, eleventh, and twelfth propositions are all inclusive in their nature. Thus appellant says of them: "Throughout the trial of the case, as hereinafter more particularly shown, numerous prejudicial matters were injected into the record in the presence of the jury, each of which to our minds separately will justify reversal of this case, and all of which we considered as a group certain to call for a reversal of the same." We have given careful consideration to these three propositions and appellant's arguments and statements in support of them, and overrule them as without merit.

Appellant has not attacked the verdict of $15,000 as being excessive; the testimony abundantly supports the amount of the jury's verdict.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.