88 So.2d 331

Kenneth ADAMS

v.

QUEEN INSURANCE COMPANY OF AMERICA.

7 Div. 235.

Supreme Court of Alabama.

May 24, 1956.

Rehearing Denied June 30, 1956.

Evans & Norred, Anniston, for appellant.

Davies & Williams, Birmingham, for appellee.

**576**

automobile. The police officers asked Adams to turn the automobile over to them so they could make a thorough investigation. Adams delivered the car to Captain Pate, the then captain of detectives of the city of Anniston, for the sole purpose for which the request had been made and in delivering the car to Captain Pate, Adams did not abandon his claim of ownership or concede that the car had been stolen.

A few days later, on September 3, 1952, Adams, accompanied by his lawyer, went to the office of Captain Pate where they discussed the ownership of the automobile with Pate and with Edwin M. Cole, an independent insurance adjustor, who on that occasion was representing the Queen Insurance Company. At that meeting Captain Pate informed those present that his investigation showed that the automobile in question had been stolen from a resident of Birmingham by the name of Leonard Salit, who had been compensated for his loss by his insurance carrier, the Queen Insurance Company. Over the objection of Adams and that of his attorney, Captain Pate delivered the automobile to Cole as the agent of Queen Insurance Company. Cole drove the automobile to Birmingham, where it was stored and where it was later sold to a party not here involved.

Within a few days after the car was delivered to Cole, Adams filed this suit in trover in the circuit court of Calhoun County against the Queen Insurance Company seeking damages for the conversion of the automobile. The defendant filed a plea of the general issue and several so-called pleas of recoupment, which we need not here consider. There was a jury verdict in favor of the defendant. Judgment was in accord with the verdict. Plaintiff's motion for a new trial being denied and overruled, he has appealed to this court.

LAWSON, Justice.

On August 28, 1952, Kenneth Adams, a resident of Anniston, was informed by police officers of that city that they had reason to believe that a 1950 Pontiac which Adams had in his possession was a stolen

■ Over the objection of the plaintiff, the defendant's witness Salit was permitted to testify that his 1950 Pontiac automobile was "taken" from his residence sometime in May, 1952. We do not concede that such ruling of the court was erroneous, but if so it was rendered harm-

less inasmuch as the trial court subsequently excluded that statement of Salit when it was disclosed on cross-examination that he was not at home on the night when his car is alleged to have been taken from the driveway of his residence. Killian v. Everett, 262 Ala. 434, 79 So.2d 17; Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543.

■ The witness Salit was allowed over plaintiff's objection to testify that at the time his car disappeared from his residence that he carried a policy of insurance with Queen Insurance Company. This was not an attempt to prove the contents of the policy, but was merely a statement of the policy's existence. The best evidence rule has no application. There was no error in this ruling of the trial court. Empire Securities Co. v. Webb, 202 Ala. 549, 81 So. 51; Greil Bros. Co. v. McLain, 206 Ala. 212, 89 So. 505; American Ry. Express Co. v. Stanley, 207 Ala. 380, 92 So. 642.

■ During the direct examination of the witness Salit counsel for the defendant propounded this question: "I will ask you to state whether or not you were paid for the theft of that vehicle." Counsel for the plaintiff objected to the use of the word "theft" as being a conclusion. The objection was overruled and the plaintiff took an exception. Even if it be conceded that there was error in this ruling of the trial court, which we do not decide, such error was without injury to the appellant, plaintiff below, since the evidence offered by the plaintiff was to the same effect. One of the interrogatories propounded to the defendant by the plaintiff, which interrogatories and the answers thereto were introduced by the plaintiff, was as follows: "3(a) State whether or not the Queen Insurance Company of America has compensated Salit for the loss resulting from the theft of his 1950 Pontiac. (b) State the amount of the compensation paid to him." The answer to these questions reads as follows: "Yes, this defendant paid to Mr. Salit the sum of $1950 for the theft of the vehicle and also paid him $140.02 for the loss of use of said vehicle." Simmons v. Cochran, 252 Ala. 461, 41 So.2d 579.

■ P. O. Wilson, vice-president of Shaver Pontiac Company, of Birmingham, a witness for the defendant, testified that on or about July 14, 1950, his company sold a 1950 Pontiac automobile to Leonard Salit. Over the objection of the plaintiff, the witness was permitted to testify that sometime in 1952 that car was stored in the shop of Shaver's Pontiac, Inc. At the time the witness Wilson made that statement not all the facts showing his familiarity with the automobile sold Salit in 1950 had been elicited. Such facts were shown by his subsequent testimony and we think the knowledge disclosed in the witness's entire examination qualified him to state that he saw the same automobile in 1952. The establishment of such facts cured any error, if there was one, in permitting the witness to testify as indicated above. Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16.

During the course of the examination of the witness Wilson, he was asked by counsel for the defendant the following question: "In your judgment, based on having seen the car before, and having seen the car in the Fall of 1952, and from your inspection of that car—the numbers on it—state whether or not, in your judgment, the car which you saw in the Fall of 1952 that was brought in there by Mr. Cole, was one and the same car that had been sold to Mr. Salit in 1950?" Counsel for the plaintiff interposed the following objection: "Object, that calls for expert testimony in a field in which Mr. Wilson is not qualified as an expert, and invades the province of the jury, calls for conclusion as to an ultimate fact, and on the further ground that the facts on which he might predicate this conclusion has not been presented to the jury." The trial court overruled the objection and after the plaintiff excepted the witness answered: "It is my judgment it was the same car."

■■ Whenever the identity of a thing is in issue, a witness who speaks from personal knowledge and observation may tes-

tify to his opinion on the subject. Turner v. McFee, 61 Ala. 468; Mitchell v. State, 94 Ala. 68, 10 So. 518; Shows v. Brunson, 229 Ala. 682, 159 So. 248; Stephens v. State, 1 Ala.App. 159, 55 So. 940; Miller v. Millstead & Hill, 17 Ala.App. 6, 81 So. 182. Wilson's identification of the automobile was positive and therefore not subject to the objection that it was a conclusion of the witness. Richardson v. Impey, Tex. Civ.App., 94 S.W.2d 490. Prior to the time the question was asked the witness it had been clearly shown that he was thoroughly familiar with the automobile when it was sold to Salit and had in his possession a copy of the bill of sale executed by his company at the time the automobile was sold and delivered to Salit and that he had found on the automobile in question, at a place not disclosed, the motor serial number appearing on the bill of sale. There was other testimony going to show the witness' personal knowledge and observation sufficient to enable him to express his opinion as to the identity of the automobile.

Salit testified that he did not remember executing a "written agreement" to the effect that after the Queen Insurance Company paid him for his loss that title to the automobile covered by the policy of insurance would be in the insurance company, but stated that in the latter part of June, 1952, an oral agreement to that effect was entered into between himself and Cole as agent for the insurance company. Cole later testified to the same effect. On cross-examination Cole stated that on a written proof of loss executed by Salit on August 4, 1952, he, Cole, wrote in "longhand" these words: "Title to car reverts to company when and if recovered." On further cross-examination, upon being shown a proof of loss which the plaintiff had introduced as part of the answers made by defendant to interrogatories propounded by plaintiff, the witness Cole said that the following words were undoubtedly included in the printed form at the time it was signed by Salit: "The insured hereby subrogates the said company to all rights and causes of action the said insured has against any person, persons or corporation whomso-

ever to the extent of amount claimed above for damage arising out of or incident to said loss or damage to said automobile."

■ Counsel for plaintiff then stated to the court: "* * * We move to exclude the testimony of Mr. Cole and of Mr. Salit relating to the effect that there was an oral agreement with the insurance company that the Queen Insurance Company would be subrogated to the rights of Mr. Salit, on the grounds that it affirmatively appears from the evidence that such subrogation agreement had been entered into in writing, and therefore there is higher and better evidence before this court." The motion was overruled and the plaintiff took an exception. There is no merit in the contention that the trial court erred to reversal in overruling the motion to exclude on the grounds asserted. The written agreement was in evidence. It had been introduced by the plaintiff and the fact that there was such an agreement did not prevent the defendant from making proof that there was also an oral agreement. If it can be said that the proof of loss did not relate to the car in question because the motor number there set out was P810-H74187, whereas the correct motor number of the Salit automobile was P8TH74187 then the existence of the proof of loss would certainly not prevent evidence of an oral agreement relating to the car lost by Salit. However, we think it clear that there is a typographical error in the proof of loss as to the motor number and that the proof of loss relates to the car purchased by Salit from Shaver Pontiac, Inc., on July 14, 1950, bearing the motor number P8TH74187. We think the error self-correcting, as we do that which appears in the invoice or bill of sale under which plaintiff claims title. In his bill of sale the motor number is given as P8TH52946, whereas the complaint alleges the number to be P8TH52496.

■ The trial court did not err in permitting the witness Wilson to testify that when he examined the automobile in question he found thereon a motor number which corresponded with the original motor number appearing on the car which

his company had sold to Salit. It was not incumbent upon the defendant to show the place on the car where the number was located before the witness would be entitled to make the definite statement of fact as to finding the number on the car in question.

■ The appellant contends that the trial court erred in refusing to give at his request the general affirmative charge with hypothesis. In considering that question we review the evidence in the light most favorable to the defendant, for where an affirmative charge is refused and the party requesting the charge appeals, the entire evidence is viewed in the light most favorable to the opposite party and where reasonable inferences may be drawn adverse to the party who requested the charge, the action of the trial court in refusing the charge must be affirmed. Hasty v. Hasty, 260 Ala. 90, 69 So.2d 282; Aircraft Sales & Service v. Gantt, 255 Ala. 508, 52 So.2d 388.

The evidence for the plaintiff is to the effect that he purchased the automobile in question from one J. H. Blanney on May 26, 1952, at Huffman, Alabama, which is near Birmingham. Plaintiff had never seen Blanney before that date but yet he paid him the sum of $1400 cash for the automobile. Plaintiff has not seen Blanney since that time. Plaintiff received a bill of sale from Blanney whereon appeared a motor number almost identical with that which appeared on the automobile at the time it came into plaintiff's possession and which remained there until the automobile came into the hands of the defendant.

However, evidence for the defendant is to the effect that the original motor number had been removed from the motor block and another inserted thereon and there is evidence for the defendant going to show that the motor number which appeared on the automobile sold to Leonard Salit in 1950 also appeared on the car in question in a "secret place" after it left the possession of plaintiff. There was other evidence which we will not here set out which tends to show that the automobile acquired by plaintiff in May of 1952 is the same as that purchased by Salit in July of 1950. The answers to the interrogatories which plaintiff introduced in evidence tend to show that the Salit automobile was stolen on or about May 21, 1952. In our opinion the evidence amply supports a finding that the defendant had become subrogated to the rights of Salit at the time of the alleged conversion.

■ Appellant argues that irrespective of whether or not the evidence tends to show that the automobile in question belonged to Salit and that he has attempted to convey his interest therein to the defendant such conveyance is invalid: "since the law in Alabama is that an attempted sale of personalty by one claiming title to it is void as against one who was holding it adversely at the time of the attempted sale." In support of that statement the following cases are cited: Posey v. Gamble, 148 Ala. 660, 41 So. 416, and Huddleston v. Huey, 73 Ala. 215. We are not here concerned with any question of champerty or maintenance. Under the long settled law of this state, as elsewhere, an insurer carrying the risk of loss from the tortious act of a third person is upon payment of such loss subrogated to the cause of action of the insured, and may sue in the insurer's own name, or in the name of the insured for the use of the insurer. Fidelity & Guaranty Fire Corp., Baltimore v. Silver Fleet Motor Express, Inc., 242 Ala. 559, 7 So.2d 290. If the insurer has the right to maintain suit in his own name under those circumstances, certain it is that it can defend in a suit of this kind.

■ We are clear to the conclusion that the evidence presented a jury question as to whether or not the defendant was the owner of the automobile at the time it came into its possession on September 3, 1952, the date of the alleged conversion, and that the trial court did not err in refusing the general affirmative charge with hypothesis requested by the plaintiff.

■ It is also insisted that the trial court erred in overruling grounds of the motion for new trial taking the point that

the verdict of the jury and the judgment rendered thereon were contrary to the great weight of the evidence. We see no reason to make a more detailed statement of the evidence. It has been read with considerable care and we think the evidence not only made a case for the jury's determination, but we feel that the verdict is well supported by the evidence. Certainly the preponderance of the evidence was not so decidedly against the verdict as to convince us that it was wrong and unjust. Howell v. Greyhound Corp., 257 Ala. 492, 59 So.2d 587. Adding support to this conclusion is the long-recognized principle that where the presiding judge, as here, refuses to grant a new trial the presumption in favor of the correctness of the verdict is thereby strengthened. Tucker v. Thompson, 263 Ala. 516, 83 So.2d 238.

■■■■ Where the plaintiff acquired the money with which to pay for the automobile is not an issue in this case and no evidence along that line was offered. But in argument to the jury counsel for plaintiff made the following statement: "They want to know where Mr. Adams got the money he paid for this car. Well, he got it by putting gas in cars and pumping air in tires." Objection of defendant to that statement was sustained, to which action the plaintiff excepted. From the statement itself it would appear that it was made in answer to an argument of counsel for defendants and if so we think the trial court might have overruled the objection without error. But we do not feel that in sustaining the objection the trial court erred to a reversal for, broadly speaking, the rule is that what constitutes proper argument by counsel to the jury must be left largely to the enlightened judgment of the trial court with presumptions in favor of its ruling.

■■■■ Charge No. 10 given at the request of the defendant could only have application in the event the jury found for the plaintiff. Since the verdict was for the defendant, the giving of this charge was without prejudicial error regardless of other questions. Rogers v. Crow, 244 Ala. 533, 14 So.2d 157; H. J. Crenshaw & Co.

v. Seaboard Air Line R. Co., 219 Ala. 206, 121 So. 736; Watson v. Hardaway-Covington Cotton Co., 223 Ala. 443, 137 So. 33.

■■■■ The defendant's given charge 12 in our opinion states a correct proposition of law and hence its giving does not constitute reversible error.

■■■■ Under the evidence in this case the automobile while in the possession of Captain Pate must be considered as being in the possession of the plaintiff and hence under the rule of our cases such possession was sufficient for the plaintiff to maintain the action of trover against one who afterwards came into possession without title, or who received the possession from one who came into possession without title, unless the defendant connected his possession with the better title. Lowremore v. Berry, 19 Ala. 130; Cook v. Patterson, 35 Ala. 102; Birmingham Southern R. Co. v. Goodwyn, 202 Ala. 599, 81 So. 339. While the burden of proof was upon the plaintiff to make out his case, he did not have the burden of proving a negative, that is, that the defendant did not have title. Defendant's charge 15 has a tendency to mislead in that respect and might well have been refused for that reason. However, we are not willing to say that the judgment below should be reversed because of the giving of this charge inasmuch as the plaintiff could have requested an explanatory charge.

■■■■ Appellant contends that the trial court erred to a reversal in overruling the ground of motion for a new trial which took the point that the judge who tried the case did not receive the verdict. In substance that ground of the motion for new trial alleges that the cause was tried before the Hon. Leslie C. Longshore, one of the judges of the Seventh Judicial Circuit, who because of circumstances beyond his control was unable to be in court when the jury announced that it was ready to return a verdict; that Judge Longshore requested the other judge of the Seventh Judicial Circuit, the Hon. W. D. DeBardelaben, to receive the verdict; that Judge

DeBardelaben inquired as to whether it would be agreeable with both sides for him to receive the verdict; that counsel for neither side expressly agreed for Judge DeBardelaben to receive the verdict but they did not express any objection to that procedure.

While there seems to be some difference of opinion on the subject, we think that the better rule is to the effect that where the judge who tried the case cannot be present to receive the verdict, it may be received by another judge of that court. Lease v. G. & A. Truck Lines, Inc., 120 Ind.App. 78, 90 N.E.2d 351; Culver v. Lehigh Valley Transit Co., 322 Pa. 503, 186 A. 70; Eastley v. Glenn, 313 Pa. 130, 169 A. 433. We feel that if counsel for the parties intended to seek to set aside the verdict on the ground that the verdict was to be received by a judge other than the judge who tried the case, it was incumbent upon counsel to expressly interpose an objection to that procedure. See Rasmus v. Schaffer, 230 Ala. 245, 160 So. 244.

The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.