97 So.2d 879

OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA

v.

Fred W. NICHOLS.

6 Div. 772.

Supreme Court of Alabama.

Oct. 31, 1957.

Spain, Gillon & Young, Frank M. Young and S. R. Starnes, Birmingham, for appellant.

524

Sirote, Permutt, Friend & Friedman, Birmingham, for appellee.

GOODWYN, Justice.

Appellee, Fred W. Nichols, brought suit against appellant, Occidental Life Insurance Company of California, to recover

disability benefits ($350 per month for two months) and return of a premium paid ($1,-213.80) as provided for in a policy of insurance issued to him by the appellant. A jury verdict was rendered in favor of plaintiff and a judgment thereon was duly entered. The defendant's motion for a new trial being overruled, it brought this appeal.

The policy sued on provides for payment of $35,000 on death of the insured and disability benefits of $350 per month for permanent and total disability. There is a provision in the policy that a disability shall be considered permanent and total after it has continued for four months, with no benefits being allowed for the first four months. The claim in this suit is for two months' disability following the four months' waiting period.

The complaint, as last amended, consisted only of Count A, which will be set out in the report of the case. Defendant's demurrer to the amended complaint being overruled, it entered a plea in short by consent. The primary defenses relied on were the general issue and fraud and misrepresentation on the part of plaintiff in his application for the insurance.

The principal factual issue revolves around the answer to a question in the application. Plaintiff answered "No" to the following question: "Have you ever had any of the following diseases or symptoms? * * * Mental derangement or any nervous disease?" The evidence discloses that he had been confined to a hospital in Birmingham on two separate occasions in 1938. The original diagnosis by his doctor at that time showed that he was suffering from manic depressive psychosis, a mental disease. However, some time thereafter, the doctor changed his diagnosis to "an anxiety reaction," terming it a "gastric neurosis." There is a conflict in the evidence as to when this was done and as to whether it was properly made. Apparently, the jury believed the change was made other than for purposes of the trial.

There was conflicting medical testimony as to the symptoms of manic depressive psychosis, how closely these symptoms matched those of plaintiff during his 1938 illness, and as to the probability of recurrence of the disease.

There is no evidence that plaintiff knew, prior to the trial, that he had ever been diagnosed as suffering from manic depressive psychosis. He testified he had been told by his doctor that the 1938 illness was hyperinsulinism.

Subsequent to that illness, plaintiff applied for and received several policies of insurance from other companies, all of which were introduced in evidence in this case. In applications for the earlier of these other policies plaintiff answered questions to the effect that he had had a nervous disorder in 1938. In this connection, it was stipulated by defendant that prior to receipt of plaintiff's application, it was in possession of coded information furnished it by the Medical Information Bureau on August 18, 1943, that plaintiff had, within "3-4-5 years" prior to that time, suffered an attack of "neurasthenia or nervous prostration"; and that "this information was in the knowledge of the defendant company at the time the defendant's policy number 2505161 [the policy sued on] was issued." It was also virtually uncontroverted that plaintiff's 1952 illness had no relation to that in 1938.

From the summer of 1952, and into the winter of the following year, plaintiff was in several hospitals and received treatment from several doctors. He suffered severe headaches, throat aches, some fever, stomach cramps, loss of appetite, loss of weight, diarrhea and muscle wasting. It appears to be undisputed that he was permanently and totally disabled during this period and that, unless the claimed misrepresentation by him is a bar to recovery, he is due the disability payments sought in this suit.

A doctor for defendant examined plaintiff prior to and in connection with issuance of the policy involved in this case. In

filling out the part of the application dealing with plaintiff's medical history the doctor took information from prior examination records which he had made in connection with his examination of plaintiff for insurance with other companies. Those records did not disclose any prior nervous or mental disease. Plaintiff signed the application but did not read it.

Defendant demurred to the complaint taking the point, among others, that it does not show plaintiff was *permanently* totally disabled as the result of an accident or disease. The argument is that the policy provides for disability payments during "permanent total disability of the insured" while the complaint alleges only "that plaintiff became so *totally* disabled on, to-wit, July 4, 1952 so as to be wholly unable to engage in any occupation and perform any work for compensation or profit and the plaintiff was continuously so *totally* disabled during the months of to-wit, July, August, September, October, November, December of 1952 and the first part of January, 1953."

■ It seems to us, from a consideration of all the allegations of Count A, that it sufficiently alleges the insured's permanent total disability. It first sets out that the insurer agreed to pay a monthly income to the plaintiff "if the plaintiff * * * should become permanently and totally disabled as the result of injury or disease so as to be wholly unable to engage in any occupation or to perform any work for compensation or profit." It then alleges that the policy provides "that such total disability shall be presumed to be permanent after the plaintiff has been continuously totally disabled for not less than four (4) months and was during all that period wholly prevented from engaging in any occupation or performing any work for compensation or profit by cause or causes other than death." It then alleges that "plaintiff became so totally disabled on, to-wit, July 4, 1952 so as to be wholly unable to engage in any occupation and perform any work for compensation or profit and

the plaintiff was continuously so totally disabled during the months of to-wit, July, August, September, October, November, December of 1952 and the first part of January 1953."

There seems to be no question about the right to disability benefits under the policy being dependent upon the insured's permanent total disability nor that the complaint must show that insured is permanently totally disabled, within the meaning of those terms as used in the policy. It is our view that Count A sufficiently alleges the insured's permanent total disability. The policy expressly provides that a total disability shall be presumed to be permanent after a continuous total disability for not less than four months. The complaint alleges that plaintiff was "so totally disabled" for more than the prescribed four months, thus effectively alleging, in accordance with the terms of the policy itself, facts showing a permanent total disability. As already noted, the complaint seeks payment for only two months of the period of disability, the first four months being excluded by an express provision of the policy.

■ Another insistence is that Count A is defective because it does not contain an allegation that the policy sued on is the "property of the plaintiff." The argument is that Form 12 of § 223, Tit. 7, Code 1940, calls for such allegation. Form 12 prescribes a form of complaint on a policy of life insurance brought by one after the death of the insured. There is no specific Code form for a complaint on a disability insurance contract. And we do not think it essential that the complaint in this type case allege that the policy sued on is the property of the plaintiff. Such allegation would appear to be superfluous. In this connection it is to be noted that Forms 13 and 14, prescribing forms of complaint in suits on policies of fire and marine insurance brought by the insured himself, as in the case before us, makes no requirement of an allegation of ownership of the policy by the plaintiff-insured. We do not

think good pleading requires such an allegation in the instant case.

No error was committed in overruling the demurrer on the grounds here insisted on.

The primary question presented on the merits relates to the effect on the case of § 6, Tit. 28, Code 1940, which provides as follows:

"No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

■ We do not understand defendant to insist here that the claimed misrepresentation was made with actual intent to deceive. Even if so, there was ample evidence to support the jury's finding that there was no such intent.

■ The issue, then, is whether the withholding of the information that plaintiff had had either manic depressive psychosis or a nervous disease in 1938 increased the risk of loss, within the meaning of § 6, Tit. 28, supra. As we see it, this phase of the case boils down to this: If plaintiff had manic depressive psychosis in 1938, the question for decision would be whether that fact increased the risk of loss. On the other hand, if it was a jury question whether he had that disease, and the jury found he did not, then there would be no occasion to decide whether such condition increased the risk of loss. It seems clear to us that, under the evidence, it was a factual issue, for the jury's determination, as to whether plaintiff suffered from manic depressive psychosis in 1938. In arriving at their verdict for the plaintiff the jury must have concluded that he was not suffering from that disease in 1938.

As to plaintiff's nervous condition, we do not see how defendant can claim that it increased the risk of loss in view of defendant's admitted knowledge of such condition.

■ As already noted, the trial court denied defendant's motion for a new trial. In this situation, the established rule of review is thus stated in Smith v. Smith, 254 Ala. 404, 408, 48 So.2d 546, 548:

"The appellant urges with great earnestness that the trial court was in error in overruling the motion for a new trial because the verdict of the jury was contrary to the great weight of the evidence. Where there is evidence which if believed justifies the verdict, a motion for a new trial is properly overruled. Johnson v. Louisville & Nashville R. R. Co., 240 Ala. 219, 198 So. 350; Kurn v. Counts, 247 Ala. 129, 22 So.2d 725. Verdicts are presumed to be correct and no ground of new trial is more carefully scrutinized or more rigidly limited, than that the verdict is against the evidence. Cobb v. Malone, 92 Ala. 630, 9 So. 738. It is recognized by this court that when the presiding judge refuses, as here, to grant a new trial, the presumption in favor of the correctness of the verdict is strengthened. Bell v. Nichols, 245 Ala. 274, 16 So.2d 799; Southern Railway Co. v. Kirsch, 150 Ala. 659, 43 So. 796."

In the light of this rule, we find no basis for reversing the cause on the ground that the verdict was against the great weight of the evidence.

■ It is insisted that error was committed in allowing plaintiff to testify, over defendant's objection, as to disclosures he made to the insurance broker, who handled the insurance policy here involved, concerning plaintiff's previous medical history. The import of the testimony was that plaintiff, before issuance of the policy, told the broker of his nervous condition in 1938.

The argument is that the broker was the agent of plaintiff and not the defendant and, for this reason, it was improper to admit such evidence. At the conclusion of the oral testimony the defendant stipulated, as already noted, it had knowledge that plaintiff was suffering from a nervous disorder in 1938. In view of that, it seems to us to be immaterial whether the broker was plaintiff's agent or defendant's agent. If he was defendant's agent the evidence was clearly admissible. If the plaintiff's agent, it was not properly admitted; but, in view of defendant's stipulation, it was error without injury. Rule 45, Revised Rules of the Supreme Court, Code 1940, Tit. 7, Appendix, Pocket Part; 261 Ala. XIX, XXXVII.

Another insistence is that it was error to admit in evidence a photograph of plaintiff taken during his 1952 illness. The picture shows him sitting in a chair with a towel across the middle part of his body. It illustrates the loss of weight and muscle wasting incident to his illness. Defendant claims it was offered solely to arouse the sympathy of the jury.

■ The basis of plaintiff's claim is his permanent total disability. Defendant's plea of the general issue, in short by consent, controverted the allegations of the complaint showing such disability. Thus, one of the principal issues was whether plaintiff was in fact so disabled. Plaintiff contends that the photograph was material and relevant on this controverted issue. We agree. Bearing on plaintiff's disability was the fact that he had lost considerable weight and had suffered from muscle wasting. Although the photograph may be regarded as being cumulative, it nevertheless shed some light upon a material inquiry. See Birmingham Electric Co. v. McQueen, 253 Ala. 395, 400, 44 So.2d 598; Harris v. Snider, 223 Ala. 94, 96, 134 So. 807; Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 227, 128 So. 389. We have examined the photograph, sent up for our inspection, and do not think it was improperly received in evidence.

Another assignment of error relates to the admission of testimony by plaintiff to the effect that, subsequent to 1938, he had never attempted to commit suicide. The question followed other inquiries tending to establish that plaintiff had fully recovered from his 1938 illness and that no symptoms of manic depressive psychosis had evidenced themselves subsequent to 1938 and up to the time of the trial. Prior to the question under review there was medical testimony that manic depressive psychosis is "frequently accompanied by suicidal tendencies."

■ The insistence is that the testimony objected to is within what is commonly known in this state as the "rule of exclusion," that is, a witness, whether a party to the cause or not, may not testify as to his uncommunicated intent, purpose or motive. See Pyles v. State, 262 Ala. 1, 2, 78 So.2d 816; Hardie v. State, 260 Ala. 75, 79–80, 68 So.2d 35; Cooke v. Embry, 219 Ala. 623, 626, 123 So. 27; Alabama Power Co. v. Edwards, 219 Ala. 162, 166, 121 So. 543; Western Union Tel. Co. v. Tatum, 35 Ala.App. 478, 482–483, 49 So. 2d 673, certiorari denied 255 Ala. 13, 49 So. 2d 678; McElroy, "Admissibility, in Alabama, of a Witness' Testimony to His Own Intent or Other State of Mind", 1 Ala. Lawyer 221. We do not think this testimony falls within the rule. It seems to us that an *attempt* to commit suicide is essentially factual. An "attempt" is thus defined in 7 C.J.S., Attempt, p. 688, viz.:

"* * * As commonly used, the word implies an act or effort, an actual deed done in pursuance and in furtherance of a design, an exercise of physical force directed to some definite end, * * *. The term generally means an act, effort, an endeavor or exertion tending toward the accomplishment of a purpose which exceeds a mere intent but falls short of an execution of it; * * *."

In Jackson v. State, 91 Ala. 55, 56, 8 So. 773, 24 Am.St.Rep. 860, cited to the foregoing text, it is said:

"The word 'attempt' is among the adjudged words, and in this state has a defined legal meaning. 'An attempt implies more than an intention formed. It means to make an effort or endeavor, or an attack.'—Gray v. State, 63 Ala. 66, 73. An 'attempt' implies an intent, and an actual effort to consummate the intent or purpose; 'to try.'—Berdeaux v. Davis, 58 Ala. [611], 612; Prince v. State, 35 Ala. 367; Lewis v. State, 35 Ala. 380, 381. * * *"

Black's Law Dictionary, 4th Ed., p. 162, defines "attempt" as follows:

"In statutes and in cases other than criminal prosecutions an 'attempt' ordinarily means an intent combined with an act falling short of the thing intended. * * * It may be described as an endeavor to do an act, carried beyond mere preparation, but short of execution."

In Webster's New International Dictionary, Second Ed., it is said that to attempt to do something is "to try; to endeavor to do or perform."

We do not think it was error to permit plaintiff to testify that he had not attempted to commit suicide.

◼ Appellant charges the trial court with error in sustaining plaintiff's objection to the following question directed to Dr. Ward, one of defendant's medical witnesses, viz.:

"I will ask you whether or not, Doctor, that the patients that you see over there, that you are treating, present symptoms, that you are treating for manic-depressive psychosis, today, that have symptoms that are similar to those that is recited in the hospital charts which I have previously asked you about."

Aside from any other ground thought to be sustentive of the trial court's ruling, it seems to us that the question is rather involved and confusing, and, for this reason,

if there be no other, the trial court should not be put in error for sustaining the general objection thereto.

During the examination by plaintiff of one of his medical witnesses the following occurred:

"Q. You made a statement that a doctor might be sure about diagnosis of manic-depressive psychosis. In the course of your observation, don't doctors sometimes have occasion to change their diagnoses?

"Mr. Young. We object to that.

"The Court. Overrule the objection.

"Mr. Young. Immaterial, irrelevant, incompetent. We are not trying the doctors in the community as to what they do or don't do.

"The Court. I think it is pretty well known that it is human to err, we all are. I think that is a matter of general knowledge, and I don't reckon doctors are different from humanity.

"Mr. Young. We except.

"A. The practice of medicine, or law, or anything else would be possible of errors, because we are all human."

◼ The overruling of defendant's objection to the foregoing question is assigned as error. It seems to us that the statement made by the trial court in ruling on the objection is sufficient answer to the claimed error. It is common knowledge that people change their minds and that doctors sometimes have occasion to change their diagnoses. If there was any error in admitting such testimony it was harmless. Rule 45, Rules of Practice in the Supreme Court, Code 1940, Tit. 7, Appendix; Rule 45, Revised Rules of the Supreme Court, Code 1940, Tit. 7, Cumulative Pocket Part, 261 Ala. XIX, XXXVII.

◼ Several of the assignments of error relate to the overruling of defendant's objections to portions of plaintiff's attor-

ney's argument to the jury. We have carefully considered these assignments of error and are not persuaded that error to reverse can properly be rested thereon. Much must be left, in the matter of an attorney's argument, to the enlightened judgment of the trial court, with presumptions in favor of its rulings. To justify a reversal we must conclude that substantial prejudice has resulted. In the light of the record as a whole, and the general tenor of the trial, we cannot say that substantial prejudice to the defendant resulted from the portions of the argument objected to. Adams v. Queen Ins. Co. of America, 264 Ala. 572, 580, 88 So.2d 331; Birmingham News Co. v. Payne, 230 Ala. 524, 528, 162 So. 116; Birmingham Electric Co. v. Mann, 226 Ala. 379, 381, 147 So. 165. As said in Alabama Great Southern Railroad Co. v. Gambrell, 262 Ala. 290, 295, 78 So.2d 619, 622:

"* * * [I]n the heat of a trial attorneys must not be held too strictly accountable for their words. All our cases recognize that a considerable degree of latitude is allowed in argument. City of Birmingham v. Bowen, 254 Ala. 41, 47 So.2d 174; Jones v. Colvard, 215 Ala. 216, 109 So. 877. * * *"

■ The defendant offered in evidence the following passages from a standard · medical book:

"So far as the influence of race is concerned, the Jews show a higher percentage of manic-depressive cases than any other."

"The racial and regional relations of alcohol to insanity are suggestive. Alcoholism is infrequent among the Jewish; but no one would deny that the mental morbidity rate is as high as that of most races."

Plaintiff's objection to this evidence was sustained. That ruling is assigned as error.

■ We entertain the view that this was a matter within the trial court's sound

discretion and that a reversal cannot be based on such ruling. The applicable principle is thus stated in 31 C.J.S. Evidence §§ 158, 159, pp. 866, 868:

'· "No precise and universal test of relevancy is furnished by the law but the determination of whether particular evidence is relevant rests largely in the discretion of the court, ·* * *." § 158, p. 866.

"The exclusion of evidence as not material or, more specifically, as not of probative value commensurate with the time which would be required for its use as evidence, either because too remote, too uncertain, or too conjectural, is a matter largely within the discretion of the court. * * *" § 159, p. 868.

The rule is thus stated in Sorrell v. Scheuer, 209 Ala. 268, 269, 96 So. 216, 217:

"As a general rule, facts are deemed relevant which logically tend to prove or disprove the fact in issue, or which afford a reasonable inference or shed light upon the matter contested; and facts bearing so remotely upon or collaterally to the issue that they afford merely a conjectural inference concerning the facts in issue should not be admitted in evidence. * * *

"Whether evidence offered is too remote to be admissible is for the court, in the exercise of a sound discretion, and such ruling will not be revised on appeal unless it is plain that error was committed. 10 R.C.L. § 87, p. 926. However, where the competency of evidence is doubtful, the better practice is to allow the evidence to go to the jury, leaving them to determine its weight and credibility. * * *"

Finding no error to reverse, the judgment. appealed from is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.