201 So.2d 514

**ALABAMA POWER COMPANY**

v.

**Betty Fay JOHNSON et al.**

**7 Div. 627.**

Supreme Court of Alabama.

June 29, 1967.

Rehearing Denied Aug. 24, 1967.

**260**

Martin, Balch, Bingham & Hawthorne and Robt. M. Collins, Birmingham, for appellant.

Beddow, Embry & Beddow, Birmingham, John H. Martin, Pell City, for plaintiffs-appellees.

Spain, Gillon & Young and Ollie L. Blan, Jr., Birmingham, for intervenor-appellee, U. S. Fidelity & Guaranty Co.

GOODWYN, Justice.

The dependent widow and minor child of Ted Johnson brought suit (the child suing by next friend) against Alabama Power Company, pursuant to Code 1940, Tit. 26, § 312, to recover for Johnson's alleged wrongful death. The Power Company brings this appeal from judgments rendered on jury verdicts in favor of plaintiffs and the workmen's compensation carrier for Johnson's employer, intervenor in the case, and also from the judgment overruling its motion for a new trial.

Appellant argues its assignments of error 1, 2 and 3. The others, not being argued, "will be deemed waived." Supreme Court Rule 9, 279 Ala. XXI, XXVI.

Our conclusion is that the judgments appealed from are due to be affirmed.

The complaint, as amended, consists of counts A and B. Both are based on defendant's negligence. Count A alleges, in substance, that Johnson, while working on a highway construction project in St. Clair County, Alabama, was killed when a dump truck, which he was touching, came in contact with defendant's uninsulated electric wires "charged with electricity of a dangerous high voltage, to-wit, 12,000 volts or more," suspended across Interstate Highway No. 20; that, when killed, Johnson "was working as a truck foreman for his employer, Burgess and Haughton Enterprises, Inc."; that both Johnson and his said employer were "subject and amenable to the provisions of the Workmen's Compensation Act of Alabama"; that, while Johnson "was engaged in his duties as such employee as aforesaid for his employer and while directing the unloading or dumping of crushed stone from a dump truck of his said employer," and while "in physical contact with said truck the same was caused to come in contact with defendant's wires or lines which were so charged with said electricity as aforesaid and as a result thereof * * * Johnson was killed, and plaintiffs allege that he was so killed as a proximate consequence of the negligence of the defendant in that the defendant negligently caused or negligently allowed said dangerous high voltage wires as aforesaid to be and remain in dangerous proximity to the surface of said highway at the time and place aforesaid."

Count B adopts all of count A down to and including the words "proximate consequence of" and then adds the following: "the negligence of the defendant in that said defendant negligently caused or negligently permitted or negligently allowed said wires or lines so charged with electricity as aforesaid to be and remain in dangerous proximity to the surface of said highway where the trucks of * * * Johnson's employer were and had been engaged in the unloading or dumping of crushed stone where said defendant could have reasonably foreseen that said truck or other trucks, would likely or probably come in contact with said wires or lines and thereby cause serious injury or death to said Ted Johnson, deceased." Count B also contains an allegation that the employer's workmen's compensation carrier, in behalf of the employer, has paid to plaintiffs certain compensation benefits on account of Johnson's death.

The compensation carrier intervened in the suit seeking reimbursement of payments made by it.

The case went to the jury on counts A and B and the intervenor's complaint.

The accident occurred on October 16, 1961, in St. Clair County, Alabama, during the construction of Interstate Highway 20. Johnson was a truck foreman for Burgess and Haughton Enterprises, Inc., then engaged in hauling and pouring shoulder material along the sides of the highway pavement. He was electrocuted when the raised dump body of one of the trucks he was supervising came in contact with overhead electric wires spanning the highway.

This dump truck consisted of a tractor and trailer. At the time of the accident it was moving slowly, with the dump body of the trailer raised for dumping gravel on the shoulder. The raised body came in contact with the wires while Johnson was walking beside the vehicle and touching it with some part of his body. There is evidence that the wires struck the raised body of the trailer at a point 20 feet and 4 inches above the surface of the highway.

The power lines consisted of three parallel uninsulated copper wires suspended across the highway and separated from each other in a single plane by a little over 3½ feet. There were 12,000 volts of current running through each wire. After touching the first wire, the vehicle moved far enough forward to hit the second wire before it was stopped.

A document captioned "General Agreement Between The Alabama Highway Department And The Alabama Power Company With Regard To Construction And Maintenance Of Power Lines On State Highway Right-Of-Way" was introduced in evidence. Item 4 of this agreement, entitled "Construction Specifications," states, in part, as follows:

"The Power Company shall construct its lines in accordance with the then current edition of the National Electrical Safety Code prepared by the United States Department of Commerce, Bureau of Standards, which is specified as a construction guide for utilities by the Alabama Public Service Commission."

The crucial factual issue for the jury's determination was whether, at the time of the accident, the three wires had sufficient vertical clearance above the highway to comply with the safety standards set forth in the National Electrical Safety Code. There is evidence that, in order to meet the requirements of the Safety Code, the minimum vertical clearance between the wires and the highway should have been approximately 22 feet at 60 degrees Fahrenheit.

One witness testified that, in his opinion, the wires, at the time of the accident, were 18 feet above the highway. Another stated that the day *after* the accident, workmen from the Power Company measured the clearance at the point of the accident and that the lowest wire was 20 feet and 4 inches above the highway.

Several persons testified that copper is an inelastic material and, that, once stretched, it will not return to its original length. It seems clear from the evidence that the jury could have found that the wires were stretched when brought in contact with the raised dump body of the trailer.

Plaintiffs base their case on the premise that the wires were not strung to the height required by the National Electrical Safety Code. Defendant, on the other hand, argues that the measurements showing the clearance to be insufficient under the Code standards resulted from the stretching of the wires at the time of the accident, thereby increasing the length of the wires and causing them to sag nearer the roadway. There is no evidence of actual measurements being made of the vertical clearance of the wires above the highway before the accident. From the evidence, a factual is-

sue as to the amount of vertical clearance at the time of the accident was presented for the jury's determination.

### Assignment of Error No. 1.

This assignment charges the trial court with error in sustaining plaintiffs' objection to the following argument made to the jury by defendant's attorney:

"Before the accident, those measurements, every single one of them if we had had the men out there the moment before the accident would have been above the Code clearance."

Plaintiffs' objection was as follows:

"We object to that. There is no evidence whatsoever of that. We object to him testifying or arguing with the jury here that if somebody had measured those wires before the accident they would have been above 22 feet."

After sustaining the objection, plaintiffs moved as follows: "And ask the jury not to regard it." The court then instructed the jury: "Yes, don't regard it."

Defendant's position is that the court's ruling had the effect of forbidding consideration by the jury of its defense that the wires were stretched in the accident and that, before this stretching, the wires met the clearance requirements of the National Electrical Safety Code.

While there is evidence of the measured vertical clearance of the wires *after* the accident, we find no such evidence as to the clearance "the moment before the accident." Defendant's expert, Robert K. Saunders, testified concerning the increase in the sag resulting from stretching the wires, but could not say definitely how much the wires had been stretched other than to give his opinion it was between 1 and 2 inches. He calculated that, for each inch of stretching, the wires would sag an additional 9%₁₀ inches. On cross-examination he testified that he had no knowledge of the height of the wires above the highway before the accident.

The rule is that what constitutes proper argument to the jury must be left largely to the enlightened judgment of the trial court, with presumptions in favor of its ruling. See: Louisville and Nashville Railway Company v. Wade, Ala., 195 So.2d 101, 103; Adams v. Queen Ins. Co. of America, 264 Ala. 572, 580, 88 So.2d 331. To justify a reversal we must conclude that substantial prejudice resulted to the injury of defendant. From a consideration of the record as a whole, we cannot say that substantial prejudice to appellant resulted from the sustaining of plaintiffs' objection to the argument. See: Louisville and Nashville Railway Company v. Wade, supra; St. Clair County v. Martin, 273 Ala. 302, 303, 139 So.2d 617; Occidental Life Insurance Company of California v. Nichols, 266 Ala. 521, 530, 97 So.2d 879; Adams v. Queen Ins. Co. of America, 264 Ala. 572, 580, 88 So.2d 331; Alabama Great Southern Railroad Co. v. Gambrell, 262 Ala. 290, 295, 78 So.2d 619; Birmingham News Co. v. Payne, 230 Ala. 524, 528, 162 So. 116; Birmingham Electric Co. v. Mann, 226 Ala. 379, 381, 147 So. 165. We note, for instance, that defendant's position that the vertical clearance of the wires after the accident resulted from being stretched when the truck hit the wires was emphasized to the jury in defendant's argument without objection, both before and after the ruling on the portion of the argument under review. Immediately following the ruling, the argument continued as follows:

"The testimony of the Witness Saunders was this, the copper wire stretched. Be real hard on that point, make up your mind whether the copper wire stretched or not, the copper wire stretched. How much? In my opinion 1 to 2 feet—1 to 2 inches, how much would that affect the clearance, nine-tenths of a foot if it were one inch and eighteen-tenths of a foot if that were 2 inches. Now, if you believe copper wire stretches,

stretched in that manner there is clearance. * * *"

### Assignment of Error No. 2.

This assignment is as follows:

"2. The trial court erred to the prejudice of appellant when it overruled appellant's objections to the following argument made by one of the attorneys for the appellee in appellee's argument to the jury:

'And I say this, if they want to go talk about punitive and punishment, let me tell you something about this defendant. This isn't an individual. The Alabama Power Company—'

the attorney for the appellant objecting as follows:

'We object to him emphasizing this is not an individual.'"

■ We see no prejudicial error in stating to the jury that the defendant is not an individual. The complaint shows that the defendant is a corporation.

There is no assignment of error challenging any other part of the argument made to the jury by plaintiffs' attorneys.

### Assignment of Error No. 3.

This assignment charges error in the sustaining of plaintiffs' objection to the following question addressed by defendant to its witness, Robert K. Saunders:

"Based on your calculation, do you have an opinion as to whether or not at the time of the accident this crossing was in compliance with the National Electric Safety Code which you just testified about?"

Plaintiffs objected on the ground that the question invaded the province of the jury. Defendant argues that whether there is compliance with the National Electrical Safety Code is a matter of expert knowledge, and, therefore, it was error not to permit defendant's expert witness to state his opinion relative to compliance with the Code. Defendant cites City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264, 122 A.L.R. 637, in support of its position. In that case no question was presented concerning the factual basis of the expert's opinion. There, the question concerned the admission in evidence of the National Electric Safety Code.

From Blakeney v. Alabama Power Co., 222 Ala. 394, 397, 133 So. 16, 18, is the following:

"The general rule is declared that, where an expert opinion is called for based upon his own knowledge of the facts, the witness should first state the facts, then his opinion or conclusion. If not on his knowledge, then the question should be hypothetical, based on facts in evidence. Brown v. Mobile Electric Co., 207 Ala. [61] 62, 91 So. 802. This means, of course, the special facts of the case, not the technical facts which qualify as an expert."

See also: Campbell v. Barlow, 274 Ala. 627, 628, 150 So.2d 359; Huguley v. State, 39 Ala.App. 104, 105–106, 96 So.2d 315; cert. den. 266 Ala. 697, 96 So.2d 319.

■ Here, the calculations of the expert were based in part on speculation by him as to how much the wires were stretched when hit by the truck. We find no evidence of how much the wires were stretched. Saunders estimated the stretching as one to two inches. He testified that he had no knowledge of the height of the wires on the day of the accident. The question propounded to Saunders did not hypothesize a set of facts on which he could base his opinion. Rather, the form of the question assumes the accuracy of his calculations as a valid basis for his opinion. The plaintiffs' objection to the question was well-taken.

Finding no reversible error, the judgments are due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.