**HUTCHINS v. HUMBLE OIL & REFINING CO.**

**No. 11265.**

Court of Civil Appeals of Texas. Galveston.

March 26, 1942.

Rehearing Denied April 16, 1942.

Elbert Roberts, of Houston, and Willett Wilson, of Corpus Christi, for appellant.

D. H. Gregg and Robt. F. Higgins, both of Houston (E. E. Townes and R. E. Seagler, both of Houston, of counsel), for appellee.

CODY, Justice.

This suit was instituted by appellant against appellee to recover damages be-

cause of the alleged failure of appellee to reasonably develop for oil or protect from drainage two oil leases held by appellee on two tracts of land belonging to appellant, consisting of 20 acres and 8.5 acres respectively.

Appellant's two tracts of land are adjacent, and are located in the Tomball townsite, in Harris County. In January, 1933, appellant executed an oil and gas lease on the 20-acre tract to one E. S. Lyne, who thereafter transferred it to appellee in March, 1933. In February, 1933, appellant executed an oil and gas lease on the 8.5-acre tract to one Walter M. Young, who thereafter transferred it to appellee in August, 1934. On the dates the above leases were made, no spacing rule was in effect. After these leases were made the Tomball oil field was developed. Appellee owned in fee many of the lots or blocks in the Tomball townsite, including lots west and north and adjoining the land of appellant. Subsequent to the making of appellant's said two leases, the City of Tomball passed an ordinance relative to the drilling of oil wells within the townsite. This ordinance was passed after the hearing before the Railroad Commission to establish a spacing pattern within the Tomball oil field. At the hearing before the Railroad Commission, in which appellee participated, there was established a 20-acre spacing—466 feet from any lease or property line, and 932 feet from any drilling or producing well.

In response to an application by appellee for an exception to the spacing rule of the Railroad Commission, leave was granted appellee to drill on drilling units 18 and 19, which units were formed on land belonging to appellee; unit 18 consisted of but 15.24 acres, and unit 19 consisted of but 15.81 acres. These two units adjoin appellant's land on the West, and the combined acreage of these two units exceeds the acreage (28.5) of appellant's land, covered by the two leases, by a small amount. The well located on unit 19 by appellee was located at a point only 206.4 feet from the West line of appellant's land if projected southward, and was 102 feet from the South line thereof if projected westward. And the well, which appellee drilled on unit 18 was located within 188.8 feet of appellant's west line. When appellee began drilling on these units appellant protested, and was assured by appellee that he would be protected and treated fairly.

It is appellant's position that to treat him fairly appellee should have taken steps to get exceptions to the spacing rule, whereby two units would be formed on appellant's 28.5 acres of land, held by appellee under two leases as stated above. And it is appellant's contention on this appeal, and the theory of his lawsuit, that a reasonably prudent operator would have arranged to, and would have managed to, drill two wells on his 28.5 acres; one as an offset to the well on unit 18, which he contends could have been spaced so that the drilling of it would have held the lease on the 8.5-acre tract; and one as an offset to the well on unit 19; that by so doing appellee would have fulfilled its obligations, and protected appellant against drainage. As stated before, appellee owned the fee to units 18 and 19, and therefore appellee owned both the working interest and the royalty rights therein; whereas it owned only the working interest in appellant's land. It is appellant's contention that because of this there was a greater duty on appellee to protect appellant from drainage through the wells on units 18 and 19 than had appellee owned merely the working interest in said units. Put specifically it is appellant's contention that a reasonably prudent operator, owning both leases on appellant's land (consisting of the 20-acre tract and the 8.5-acre tract) would have immediately, when units 18 and 19 were drilled, drilled offset wells on the 20-acre lease and the 8.5-acre lease; and contends that the wells would have been paying wells.

In other words, it is appellant's contention, and he has sufficient pleadings to present such theory, that a reasonably prudent operator would never have drilled at the location on appellant's land where appellee did drill, but would have taken advantage of the fact that it owned leases on adjoining tracts belonging to appellant, aggregating 28.5 acres, and have located and drilled two wells thereon. Appellant submitted special issues to be submitted to the jury, which, had they been answered favorably, would have entitled him to a verdict, and, if his theory is legally tenable, would entitle him to judgment for damages—provided there was proof of drainage.

The court evidently considered appellant's theory to be legally untenable, and declined to submit any special issue in support thereof. He declined to submit any

special issues relative to the 8.5-acre lease or tract as appellee had suffered it to expire; and he submitted certain special issues, all of which became immaterial except special No. 1 when the jury answered Special Issue No. 1 in the negative. Said special issue reads: "Do you find from the preponderance of the evidence that an operator of ordinary prudence in the exercise of reasonable diligence, as that term has been hereinbefore defined for you under all the facts and circumstances existing at the time, would have drilled an additional well on the Hutchins' 20-acre tract after the completion of the well thereon known as Hutchins No. 1, and before the filing of this suit on June 30, 1938?"

▆▆▆ If appellant was not entitled to have appellee merge the two leases which it had acquired from different persons, at different times, covering separate, but adjoining, tracts, appellant's main theory is legally untenable. Aside from the fact that these two leases constituted two different contracts, and the court has no power to re-write the leases to make the same into one lease with the obligations of both leases, appellant has precluded any possibility of this being done by continuing to accept rentals on the 8.5-acre tract, thereby granting appellee the right to defer drilling operations for the year ending February 18, 1938 (the lease on the 8.5-acre tract being an "unless lease"). Gulf Production Co. v. Continental Oil Co., Tex.Sup., 132 S.W.2d 553, 562. And the offset provision of said lease reads: "In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent lands and within one hundred fifty (150) feet of and draining the leased premises, lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances."

' [3, 4] Appellant's land was some 38 feet in excess of 150 feet distance from the well on unit 18. The parties having made express agreement with reference to offset obligations, the court cannot imply other or different offset obligations. Gulf Production Co. v. Kishi, 129 Tex. 487, 103 S.W.2d 965, 968; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 444, 6 S.W.2d 1039, 60 A.L.R. 890; Texas Law Review, Vol. 11, p. 435. The obligation to drill an offset well on the 8.5 acres never therefore arose. The court properly refused to submit special issues to the jury upon the theory that appellee was under a different or more burdensome implied offset drilling obligation than the express obligation in the lease.

▆▆▆ With reference to the 20-acre tract the jury found, as stated above, that an operator of ordinary prudence in the exercise of reasonable diligence would not have drilled an additional well thereon after well No. 1 thereon had been completed, and prior to the filing of this suit. The evidence in this record bearing on this point is voluminous. It is well settled that an operator is not under a duty to drill a well, at a loss to himself, for protection or for further development. Texas Pac. Coal & Oil Co. v. Barker, 117 Tex. 418, 433, 6 S.W.2d 1031, 60 A.L.R. 936. And if there was some evidence from which the jury might infer there was some drainage from the 20-acre tract, there was also evidence from which it might be inferred this drainage was largely replaced by drainage to the 20-acre tract. Certainly there was ample evidence that would support the jury in concluding that another well drilled on the 20-acre tract could have been drilled only at a loss to appellee. It is sufficient to say that we appraise the evidence as being ample to support the jury's answer to special issue No. 1.

▆▆▆ Appellant called as witness to testify as an expert on drainage R. C. Paul. Mr. Paul had been employed by appellee for many years and while working for appellee had studied geology, and had been the resident production geologist for appellee at Tomball oil field. He had never had actual experience in figuring drainage and oil reserves. The court concluded Mr. Paul was not qualified to testify as an expert, and refused to permit him to answer questions on drainage. We believe the court did not abuse the wide discretion which he has to pass upon the competency of an expert witness in holding Mr. Paul was not qualified. "It is not enough for a witness who would qualify as an expert to prove that he belongs to the profession or calling to which the subject matter of the inquiry relates; he must further show special knowledge as to the very question upon which he proposes to express his opinion." 19 Tex.Jur. p. 72.

574

Appellant called Mr. Carlton Speed, an expert in knowledge of oil and gas geology, and asked him "From your experience and your knowledge of the custom existing in the oil industry, etc., would it in your opinion have been reasonable to drill Hutchins an offset equal distance from the well on unit 18 and as offset well equal distance from the well on the unit 19 in order to protect his land from drainage?" The court refused to permit the question to be answered, not because of any lack of expert knowledge on the part of the witness, but because the question involved a question "of diligence or negligence and therefore the ultimate fact to be considered by the jury and the subject of experts' opinion involving a mixed question of law and fact, and the objection thereto is therefore sustained." We think the trial court properly sustained the objection. Houston & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 421, 422, 108 S.W. 808. We believe the court did not err in excluding the answer to such question for another reason. From the witness's answer (which appears in the bill of exceptions to the action of the court in excluding it) it is clear that he interpreted the question as embracing all of appellant's land,—the 8.5-acre tract, as well as the 20-acre tract—and he answered it upon such construction. The witness' construction of the question seems to be the correct one. And since appellee could not be held liable for implied obligations to drill offset wells, as shown above, the question was improper because not limited to the 20-acre tract belonging to appellant. Another question which appellant asked Mr. Speed, and which Mr. Speed was not permitted to answer, reads in part as follows: "* * * what in your opinion would a reasonably prudent operator owning the lease on the Hutchins 28½ acres of land do with reference to drilling offset well to units 18 and 19?" The court correctly sustained appellee's objection on the grounds just discussed.

The rulings which we have made upon the points hereinabove discussed do by necessary implication dispose of the other points of similar import urged by appellant. We have carefully examined all such points and find that they do not present any reversible error.

The judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.