306 So.2d 251

**ALABAMA POWER COMPANY**

**v.**

**Jimmy Ray TATUM.**

**ALABAMA POWER COMPANY**

**v.**

**Clarence TATUM.**

**SC 632 and SC 946.**

Supreme Court of Alabama.

Jan. 9, 1975.

Balch, Bingham, Baker, Hawthorne, Williams & Ward, Harold A. Bowron, Jr., and John P. Scott, Jr., Birmingham, for appellant.

**502**

C. Lee Reeves, Birmingham, for appellees.

JONES, Justice.

This is an appeal by the defendant, Alabama Power Company, from a judgment for the plaintiffs ($35,000 for personal injury to nine-year-old Jimmy Ray Tatum and $5,000 for the derivative action by his father, Clarence Tatum), who alleged that their injuries and damages proximately resulted from the negligence of defendant in maintaining its electrical power lines through a tree which the boy was climbing when he was electrically burned.

The Power Company claims that the trial Court erred in giving at Tatums' request the following instruction to the jury:

"I charge you, members of the jury, that an electric company maintaining

a dangerous wire through or near a tree is bound to anticipate that persons may lawfully climb the tree, to exercise due care to prevent injury to such persons from its wire, and to keep such wires insulated in places where children climbing the tree will come into contact with the wire."

The Power Company contends that the given charge was an erroneous extension of its legal duty in that the charge imposes upon it the absolute duty to anticipate that persons may lawfully climb the tree, thus making it an insurer. Rather, the Power Company asserts, "the legal duty is to use reasonable care when it may be reasonably anticipated that persons may come in contact [with its electric lines]. Also, there is no duty to insulate or isolate electric lines which are so placed that it cannot be reasonably anticipated that someone might come into contact with them."

The Tatums counter with the contention that the giving of this instruction was without error for two reasons: First, because under the facts and circumstances of this case the absence of any reference to the law of reasonable anticipation was legally proper; second, even if such omission renders the charge misleading or incomplete, it was corrected or rendered harmless by other portions of the charge which included the reasonable anticipation rule.

We agree with appellees' second contention and hold that the trial Court did not err in giving this requested instruction. Since our holding is based on the conclusion that this charge was not an erroneous instruction in view of the entire charge given by the court, we will assume without deciding, in our further discussion of this point, that this charge, standing alone, constituted an abstract legal principle which was both incomplete and misleading for its failure to include the rule of reasonable anticipation.

Before proceeding with a statement of our reasons for so holding, a brief summary of the facts may be helpful:

Jimmy Ray Tatum suffered a serious electrical burn when he attempted to retrieve a ball from a hickory tree in the front yard of his parents' home. While climbing the tree, he came into contact with an uninsulated power line carrying 7200 volts.

Testimony showed that while this line had been inspected by the Power Company nine months before the accident, the tree had not been trimmed since 1966. (Their manual for operation and maintenance of these facilities showed that these wires were to be inspected annually.)

The testimony of Jimmy Ray's doctor showed that he suffered third degree burns on his left arm, right hand and thigh, all of which required extensive plastic surgery, and he had to have his right third finger amputated. In addition, he suffered a permanent functional disability in his right hand which would preclude his employment in certain jobs.

The sister-in-law of Clarence Tatum, who previously occupied the Tatum property, testified that she had previously informed the Power Company of wires running across her yard and through the trees. Specifically, she had reported the tree in question to a meter man at one time and had asked him about the limbs on the tree.

Clarence Tatum testified that on the day of the accident he could see where the wires had burned the bark from different parts of the limbs near the top of the tree; that on the day before the accident his children and other children were playing in and around the tree, though at that time he did not know that the wires ran through the tree.

We reemphasize the point that our decision as to whether the foregoing facts would support the giving of the requested instruction here in issue, apart from the entire charge, is unnecessary. Admittedly, this charge standing alone is the equivalent of a directed verdict for the plaintiffs on the issue of the defendant's duty to anticipate that someone might climb the tree and

**504**

its further duty to insulate the electric lines that passed through or near the tree. We agree with the Power Company that the fact that the legal principle contained in this charge is an excerpt from one or more of our judicial opinions [1] does not of itself make such excerpt appropriate for instructions to juries. Mobile Infirmary v. Eberlein, 270 Ala. 360, 119 So.2d 8 (1960). See also Hatcher v. Camp, 279 Ala. 475, 187 So.2d 232 (1966); Britling Cafeteria Co. v. Irwin, 229 Ala. 687, 159 So. 228 (1935).

■ We further agree with the Power Company's insistence that the legal propositions stated in this charge are to be qualified by the nearness or remoteness of the tree with respect to human beings or perhaps other reasons that make it improbable that a person will climb the tree and that these circumstances are normally questions of fact for the jury.[2] When the subject charge is reviewed as a single unit of instruction on the law of the case, however, we are clear to the conclusion that the case was not submitted to the jury absent the rule of reasonable anticipation; but, rather, a fair and reasonable interpretation of the charge as a whole left to the jury's determination the issue of whether the Power Company had discharged its legal duty to use reasonable care under the circumstances to reasonably anticipate that the minor plaintiff might be expected to climb the tree here involved.

The Alabama Rules of Civil Procedure became effective July 3, 1973, and this trial commenced July 10, 1973. Rule 51 (Instructions to Jury: Objection) not only changed substantially the Alabama practice but it differs in several particulars with, and in our opinion is an improvement of, its federal counterpart. It provides that requests to instruct the jury, with respect to such charges marked "Given", shall be read without reference to which party filed the request; that such written instructions shall not go into the jury room; and, both as to "given" and "refused" charges, grounds for objection must be assigned before the jury retires, but out of the hearing of the jury.

As the Committee Comments to the Rules amply demonstrate, the development of the body of case law establishing the test for the giving or refusal of written requested charges was influenced, at least in part, by the practice then prevailing as to written requested charges. While the trial court nominally adopted the "given" written requested charges as its own and instructed the jury to consider the same along with its oral charge, this theory was diminished in fact by the practice of singling out the party at whose request the charge was given, permitting the written charge to be taken into the jury room, and the placing of the trial court at the disadvantage of the automatic exception rule. Because of this practice, the tendency of which was to permit the jury to give undue emphasis to a "given" written requested charge, the appellate test of its propriety, at least to some degree, treated such charge as an entity apart from the court's oral charge.

■ Whatever result might have here obtained under the old practice we need not decide. We look, instead, to the new practice prescribed under Rule 51, A.R.C. P., which treats the entire charge as a single entity. When testing the validity of any of its parts, including "given" written requested charges, we must now look to the whole of the court's charge. See Lyons, Alabama Practice: Rules of Civil Procedure Annotated, Vol. 2, pp. 234–237.

■ The reality of having the jury instructed on the law of the case by the trial judge, with equal emphasis as to both the

1. Blackwell v. Alabama Power Company, 275 Ala. 123, 153 So.2d 670 (1963); Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979 (1917).

2. See Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 [1975].

oral and any "given" written requested charge, has been given operative effect by Rule 51. Stated otherwise, we will review alleged error in the giving of a written requested charge in the same context as if such charge were a part of the oral charge; and, as we have stated many times, where the objected to portion of an oral charge is misleading, abstract, or incomplete, we will adjudge error to reverse only if we conclude that prejudice resulted from the giving of such charge in light of the entire instruction. Wren v. Blackburn, 293 Ala. 393, 304 So.2d 187 [1974].

■ We observe initially that the trial Court, here, scrupulously followed the procedure outlined in Rule 51. He made no reference to which party requested the various "given" instructions and withheld their physical possession from the jury. He, also, in furtherance of the spirit of this rule, incorporated these instructions in the appropriate part of the Court's full charge in a manner to preserve its symmetry—a practice which we commend and strongly encourage.

Because this is the first case to reach this Court directly involving Rule 51,[3] and because of its significance to the dispositive issue before us, we set out in some detail the structure and substance of the trial Court's charge. After addressing the jury on such preliminary matters as alignment and definition of the parties, and after stating the respective claims and defenses, the Court defined in more or less classical language the law of negligence and contributory negligence. He thereupon interspersed several written instructions requested by each of the parties relating to the defense of contributory negligence as affected by the respective ages of the plaintiffs. He then proceeded orally to instruct on the burden of proof, after which he made the following statement and gave the following written requested instructions:

"There are several charges that have been submitted to me by the attorneys on both sides. These are, in my opinion, correct statements of the law. I will read them to you. They are part of the charge in this case, and are to be related to what I have already stated.[4]

"I charge you, members of the jury, that if a tree is very close to an area of human habitation, and if you believe from the evidence that defendant, Alabama Power Company, maintained a dangerous electric wire through a tree in the front yard of plaintiffs' residence, then maintenance by defendant of said electric wire through that tree requires frequent inspection, for the defendant is charged with the knowledge that the dangerous current may escape and injure human beings.

"I charge you, members of the jury, that defendant Alabama Power Company, as the proprietor of an electric utility company, is charged with the duty of making such reasonably frequent inspections of its lines as would cause it to discover and remedy conditions of potential danger to persons resulting from the proximity of trees to those lines at places where persons lawfully frequent. I further charge you that the failure to discover and remedy such conditions at such places is negligence.

"I charge you, members of the jury, that the duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come

3. See City of Birmingham v. Kelly, 52 Ala. App. 385, 293 So.2d 301 (1974).

4. We observe in passing that the omission of this introductory statement would have been entirely proper.

in contact therewith. This statement of the rule implies that, in the absence of statute or municipal ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them.

"I charge you, members of the jury, that it is negligence to maintain an uninsulated highly charged wire, without any warning of the danger, in any place where persons may reasonably be expected to come in contact therewith.

"I charge you, members of the jury, that the obligation of the electric company to insulate is not absolute, but alternative, in its nature. Either the wire must be insulated, or it must be so located as to be, comparatively speaking, harmless.

"I charge you, members of the jury, that if a tree is very close to an area of human habitation, the maintenance by defendant of an electric wire through that tree requires frequent inspection, for the defendant is charged with the knowledge that the dangerous current may escape and injure the human beings.

"I charge you, members of the jury, that in maintaining electric lines reasonable care requires inspection such as reasonable prudence may suggest.

"I charge you, members of the jury, that the duty of reasonable care does not depend on the number exposed to injury; it extends to the safeguarding of everyone at places where he might rightfully be.

"I charge you, members of the jury, that the duty of defendant in conveying an electric current of high potential is to exercise commensurate care under the circumstances and to insulate its wires whenever it may be reasonably anticipated that persons, pursuing business or pleasure, may come in contact therewith. I further charge you that 'commensurate care under the circumstances' means a higher degree of care when the amount of voltage is high than when the amount of voltage is low.

"I charge you, members of the jury, that an electric company maintaining a dangerous wire through or near a tree is bound to anticipate that persons may lawfully climb the tree, to exercise due care to prevent injury to such persons from its wire, and to keep such wires insulated in places where children climbing the tree will come into contact with the wire. [This is the charge challenged by this appeal.]

"I charge you, members of the jury, that in determining from all of the evidence in this case whether or not the defendant was guilty of negligence which proximately resulted in the injury to Jimmy Ray Tatum, if you find that common experience has demonstrated that dangers lurk in the method adopted or in the instrumentality maintained by the defendant, it rests under the obligation of ascertaining the peril and taking precautions to avoid injury therefrom to others.

"I charge you, members of the jury, that under the law of Alabama the defendant has a right to cut or remove all timber from its rights of way or outside its rights of way, which may endanger its lines or which may endanger persons by creating a 'danger zone' by the presence of such timber.

"I charge you, members of the jury, that if a man of reasonable care, charged with the duty to discover and remedy conditions of potential danger to persons resulting from the proximity of trees to defendant's electric distribution lines, would determine that a tree in the yard of plaintiffs' residence was in such close proximity to defendant's said lines that it was in fact a danger to the health and safety of persons coming into contact with said tree, then failure of defendant to discover and remedy the danger is negligence if in fact any of defendant's employees, acting within the

line and scope of their authority, should have discovered the danger and did not, or if any of the said employees did discover the danger and the defendant did not remedy it.

"The Court charges the Jury that in no case can negligence be assumed from the mere fact of injury and the burden of proving the negligence alleged in each complaint rests upon the plaintiff therein.

"The Court charges the jury that the burden is on the plaintiff in each case to prove to your reasonable satisfaction that Jimmy Ray Tatum's injury was proximately caused by the negligence of the defendant as alleged.

"The Court charges the jury that the mere fact that Jimmy Ray Tatum was injured as a result of an electric shock from electricity transmitted from defendant's electric wire is not in itself sufficient to warrant you to return a verdict for the plaintiff and against the defendant in these cases.

"The Court charges the jury that there is no duty upon the part of an electric company to cover its electric wires with insulating material at a point where it cannot reasonably anticipate that any person would come in contact therewith.

"The Court charges the jury that the defendant, as an electric utility, is not an insurer, and it is not under an obligation to so safeguard its wires or equipment so that by no possibility can a person come in contact therewith.

"The Court charges the jury that the duty upon an electric company with reference to insulating or safeguarding its wires from contact with persons is limited to places or locations where it can reasonably anticipate that persons will likely or probably be or could likely or probably come in contact therewith.

"The Court charges the jury that the burden of proof is on the plaintiff to

reasonably satisfy you that the proximate cause of Jimmy Ray Tatum's injuries as alleged in the complaint was the negligence of the defendant. Verdicts cannot rest upon guess, speculation or conjecture; and for the jury to find a verdict against the defendant, under the complaints, you must be reasonably satisfied from the evidence that the defendant was negligent and that such negligence proximately caused the injuries of Jimmy Ray Tatum as alleged in the complaints."

The Court then concluded his charge, instructing the jury orally on the law of damages, forms of verdicts, etc.

This Court holds that the giving of the subject instruction, when taken together and in conjunction with the whole of the Court's charge, does not constitute reversible error. We believe a fair interpretation of the entire charge dictates a conclusion that the trial Court did not instruct the jury to find against the Power Company absent a consideration of the reasonable anticipation rule.

■ The Power Company also contends that the trial Court erred in overruling its objection to the introduction in evidence of the Tatums' Exhibits No. 9 and 10, both of which were produced by the Power Company in response to the Tatums' motion for production of documents. The two documents, the subject matter of this alleged error, outlined the Power Company's procedure for the inspection and maintenance of its transmission lines.

The objection interposed to the admission of these exhibits was:

"We assign our objection to each one of those exhibits, separately, and severally, on grounds previously stated, irrelevant, immaterial. It contains material there that is not material to this law suit, and not properly identified, and the predicate hasn't been laid."

Consistent with the stated grounds of objection, the Power Company contends

that the trial Court erred in admitting these documents in two particulars: first, no predicate as to authenticity or genuineness of the documents had been laid; and, second, the documents, which dealt with inspection procedures for transmission lines rather than distribution lines of the type with which Jimmy Ray came into contact, bore no relevancy to any material issue in the case.

We find no error to reverse on the admission of the challenged documents.

The Power Company argues "that in order for a business document to be admitted into evidence, *a proper predicate and foundation* for the introduction of that document *must be laid*." Meriwether v. Crown Investment Corporation, 289 Ala. 504, 268 So.2d 780 (1972); United Security Life Insurance Company v. Birmingham Trust National Bank, 282 Ala. 295, 211 So.2d 139 (1968); Powell v. Atlantic Coast Line Railroad Co., 274 Ala. 533, 150 So.2d 179 (1962); Jenkins v. Avery, 257 Ala. 387, 59 So.2d 671 (1952). See also A.R.C.P. (44 [h]).

The general rule regarding the introduction of documentary evidence set out in 88 C.J.S. Trial § 62, at 168–169, is relied upon, which includes the language ". . . and, if objected to, its genuineness [must be] established by testimony . . .".

■ We have no quarrel with this proposition or the authority cited therefor; but this rule does not relate to authentication of documents produced by the objecting party in compliance with a motion to produce. That element of the required predicate as to genuineness of documents has been satisfied by the objecting party's compliance with the motion to produce. Otherwise stated, for the Power Company to question the genuineness of its own documents is to deny its faithful compliance with the motion to produce. It is an established rule of evidence in this state that a party is relieved from the necessity of proving the authenticity of a document which he offers in evidence when such document is produced by the adverse party on notice or motion, and the party producing the document is a party to the instrument or claims a beneficial interest thereunder. Woodstock Iron Co. v. Reed, 84 Ala. 493, 4 So. 369 (1887); Ward v. Reynolds, 32 Ala. 384 (1858).

■ While the authenticity of the document requirement has been met by the very nature of its discovery (here, by motion to produce), we agree with the Power Company that the mere production of a document does not of itself supply the relevancy requirement, which must also be met as a condition to its admissibility. Instead, the court must look to the substance of the document to test its admissibility when challenged on the ground of relevancy.

■ The question of whether a particular piece of evidence is relevant is one addressed largely to the discretion of the trial court (Bradley v. Jones, 282 Ala. 331, 211 So.2d 465 (1968); Occidental Life Ins. Co. of California v. Nichols, 266 Ala. 521, 97 So.2d 879 (1957); Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216 (1923)); and we have been unable to ascertain any abuse of this discretion in the present situation.

It is true that Exhibits 9 and 10 show the inspection procedure for a transmission line and that the line in question was a distribution line which had different inspection procedures; but all of this was made perfectly clear to the jury, especially in light of Mr. Nelson's (Power Company Superintendent) testimony which distinguished the two types of lines. Additionally, since other admitted exhibits set forth the inspection procedures for distribution lines, the relevancy of Exhibits 9 and 10 was amply demonstrated in the comparison which the jury was thus able to make of the two inspection procedures.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, MADDOX and FAULKNER, JJ., concur.

COLEMAN, J., dissents in part.

McCALL, J., not sitting.

COLEMAN, Justice (dissenting in part):

I agree in the result that the trial court did not err in giving the requested charge first set out in the opinion of the court.

I do not agree that plaintiffs' Exhibits 9 and 10 were properly admitted into evidence. The exhibits relate to inspection of transmission lines. The lines here involved were not transmission lines and Exhibits 9 and 10 are irrelevant. Accordingly, I dissent.