These consolidated appeals involve a suit on a promissory note and a suretyship agreement. The trial court granted judgment on a jury verdict of $1,240,000.00 against the corporate maker of the note and $488,250.00 against the individual defendants who signed as sureties for the corporation. In addition to questions as to the validity of these instruments, the case presents questions regarding the pre-trial hearing and the instructions to the jury.
On December 3, 1974, Bama Coal Company, Inc., was organized as an Alabama corporation and began producing coal about the same time. The original incorporators were Ray Graham, Kenneth Watts, Dewel Emerson, T.C. Evans, and Douglas Tittle. Kenneth Watts later left the group and T.C. Evans bought his shares of stock. Dennis Mills later became a shareholder of the corporation. These individuals, other than Watts, are the plaintiffs/appellees in these consolidated appeals. They are residents of Marion County, which is the area where Bama Coal operated.
After Bama Coal was incorporated, the price of coal in the area dropped from forty *Page 15 
dollars to eighteen or twenty dollars per ton, and the company began to experience financial difficulties. Dennis Mills came to the company to manage it and put it on sounder financial ground. Bama Coal never had a long-term contract but operated only on the spot market. The Kimberly-Clark paper mill in Childersburg bought some coal from Bama Coal, but stopped purchasing because of the high ash content of the coal.
In spite of Bama Coal's difficulty in selling its coal, it attracted several prospective buyers interested in purchasing the company. One group put up an irrevocable letter of credit for $100,000.00 as earnest money for a proposed purchase of Bama Coal. That purchase fell through, however, and payment of the letter of credit was refused on demand.
In January of 1976, Gerald Rannells of Lake Oswega, Oregon, came to Alabama in search of coal properties to lease or buy. He heard that Bama Coal might be for sale, so he came to Marion County where he met Ray Graham and Paul Ray. The officers of Bama Coal showed Rannells their equipment, facilities, coal stockpile, and some financial information. They estimated that their coal stockpile was worth approximately $100,000.00.
Rannells was working with Shirl McArthur, of Huntington, Utah. McArthur was the primary owner of American Coal Company, which conducted a large underground coal mining operation in Utah. McArthur, Rannells, Kenneth Morgan, and Robert Harris began discussions in early 1975 relative to forming a corporation to purchase coal interests in the southeast. Harris was an attorney from Jeffersonville, Indiana, with coal investments in Kentucky, Tennessee, and West Virginia. Morgan was from Tennessee and had business with Harris investing in and developing coal mines. These four individuals formed American Coal Energies, Inc., the corporation which bought Bama Coal.
After Rannells first visited Bama Coal in January of 1976, McArthur sent two employees of his Utah company to look into the possibility of buying Bama Coal: Lavon Day, a mine safety and personnel manager, and John Parker, an accountant. They briefly met with officials of Bama Coal and inspected the Bama Coal premises, and they were given a list of Bama Coal's accounts payable totalling approximately $267,000.00. After about two days in Alabama, they returned to Utah and reported to McArthur.
The parties reached an agreement to sell the stock of Bama Coal Company to American Coal Energies, Inc. A written contract, promissory note, bill of sale, and suretyship agreement were prepared as evidence of this agreement. Kenneth Morgan, as president of American Coal Energies, signed the contract and promissory note, attested by Lavon Day, on February 23, 1976. All of the stockholders of Bama Coal signed the contract as sellers. The contract and note provided, among other things, that the shares of stock in Bama Coal Company would be transferred to American Coal Energies for the sum of $810,000.00, which was to be paid according to the terms of the promissory note. A portion of the purchase price was to be guaranteed by the shareholders of American Coal Energies, Inc. The accounts payable of Bama Coal were represented to be approximately $267,000.00, against which a $100,000.00 credit for stockpiled coal was to be applied. An addendum, containing terms not material here, was later added to the contract.
On March 5, 1976, the parties met at the law office of Vinson Guyton in Hamilton, Alabama, to close the transaction. The Bama Coal stockholders and their attorney were present, as were Rannells, McArthur, Morgan, and J. Curtis, an attorney for American Coal Energies, Inc.; Harris was not present. Rannells, McArthur, and Morgan signed the suretyship agreement. At trial they asserted that they signed as sureties only on condition that Harris also sign, but there was evidence to the contrary, as will be explained below. Jerry Guyton, the attorney for Bama Coal, held the documents in escrow pending the signature by Harris of the suretyship agreement. There *Page 16 
was evidence that McArthur told Rannells to obtain Harris's signature.
Guyton testified that a few weeks later McArthur called him to learn if Harris had signed, and Guyton answered in the negative. Shortly thereafter, according to Guyton, Rannells came to his office and took the suretyship agreement. Rannells returned a few days later with a signature on the document that purported to be Harris's. Rannells and McArthur disputed this version of events at trial, but the parties agreed that on April 8, 1976, Guyton delivered the documents, except for the suretyship agreement, to Rannells, who signed a receipt for them. Guyton testified that he did not deliver a copy of the suretyship agreement to Rannells because, Rannells having brought the signed original to him, he assumed Rannells had made a copy to keep.
American Coal Energies took the books of Bama Coal to a new office within a few days of the March 5 closing and John Parker began verifying the accounts payable. He arrived at a figure of $388,000.00. Furthermore, the bank on which the letter of credit was drawn refused to honor it, and American Coal Energies was unable to sell the coal stockpile. American Coal Energies made one payment of $10,000.00 on the amount due under the contract and note.
The former stockholders of Bama Coal filed this suit on January 12, 1979. The complaint sought $810,000.00 plus interest and attorneys' fees from American Coal Energies, Inc., and $325,000.00 (the amount secured under the suretyship agreement) from Rannells, McArthur, Harris, and Morgan. Default judgment was taken against Harris; Morgan was dismissed as a party when plaintiffs learned that he had died in a plane crash. McArthur and American Coal Energies were represented by the same counsel throughout the pleading, trial and appeal of the case. Rannells was and is represented by separate counsel.
Several continuances were granted during the course of pleading and discovery. McArthur and American Coal Energies filed a counterclaim for fraudulent misrepresentation of the accounts payable and the value of the letter of credit and the coal stockpile. They filed motions for a pretrial conference on February 4, 1980, and March 30, 1981. McArthur and American Coal Energies state that they filed a third motion for pretrial conference on October 5, 1981, and that they have a copy of this motion marked "filed" even though it does not appear in the record.
Trial was set for November 9, 1981. On October 20, 1981, the attorneys for the plaintiffs and for McArthur and American Coal Energies appeared before the court for a pretrial conference. Because Rannells's attorney was not present, the parties agreed to have an oral conference at a later date. On November 4, a motion for continuance by McArthur and American Coal Energies was filed; they state that they filed this motion on October 20. The court entered the following order on November 4, 1981:
 "This cause coming on to be heard this date on a Motion for Continuance, and after considering the allegations of the petition and the knowledge of the facts known to this Court, the said Motion for Continuance is denied, based on the following facts known to the Court:
 "On October 20, 1981, this case, along with numerous other cases was on the pretrial docket set before this Court. Honorable Morris Savage, one of the attorneys for Defendants and both attorneys for the Plaintiffs was [sic] present in Court, and Honorable Morris Savage stated to the Court on that occasion that he would like to have an oral pretrial hearing at a different time because his co-counsel was not present in Court, and the Court made known to the Honorable Morris Savage that this was agreeable. Both of Plaintiffs' attorneys stated in open court that they were agreeable to an oral pretrial hearing at any time.
 "From October 20, 1981, until this date, this Court has been available for a pretrial hearing and was and is still willing to have a pretrial hearing, but does not intend for this method or practice to be *Page 17 
used in order to continue cases before this Court when cases have been pending for such long periods of time as has this case.
 "The attorneys for the parties in this case are familiar with the practice of this Court at pretrial hearing, that unless there is an issue that needs resolving, the Court announces the cases set for trial and if any issues need to be formulated at a later date, it is so done. Neither of the attorneys for the parties announced such problems at the pretrial hearing of this case, and other cases on October 20, 1981, but simply stated that they wished to have an oral pretrial conference on Friday, November 6, 1981, at 10 A.M. at the Courthouse in Hamilton, Alabama."
The trial court held the pretrial conference on Friday, November 6, with attorneys for all of the parties present, and entered a pretrial order. The case was called for trial on Monday, November 9, and the parties announced ready. A jury was selected and the trial of the case began. At the close of plaintiffs' evidence the defendants filed motions for directed verdict, which the trial court denied. At the close of all the evidence, the plaintiffs and McArthur and American Coal Energies filed motions for directed verdicts, which were denied.
The jury returned a verdict in favor of the plaintiffs against American Coal Energies in the amount of $1,240,000.00 and in favor of the plaintiffs against McArthur and Rannells in the amount of $488,250.00. The trial court entered judgment on the verdict. The defendants filed motions for judgment notwithstanding the verdict, or in the alternative, for new trial. Following hearing and argument on these motions, the trial court denied them, and defendants appealed.
McArthur and American Coal Energies raise the following issues:
 "I. Whether the trial court erred in failing to respond to timely written notice by the attorney for the defendants, by not directing and requiring the attorneys for the parties to appear before it at least 20 days before the case was set for trial for the holding of a pretrial conference.
 "II. Whether a suretyship agreement, whose partial execution, and delivery was expressly conditioned upon execution by all four sureties, was valid when delivered without being executed by all four sureties.
 "III. Whether the trial court erred in allowing the witness Harry Green to testify as to reasonable attorneys fees on the promissory note and suretyship agreement.
 "IV. Whether the trial court erred, when reading plaintiffs' written requested charges to the jury, by identifying those charges as being requested by the plaintiffs, and in failing to incorporate the requested written instructions into the body of the charge.
 "V. Whether the trial court erred in giving certain of the plaintiffs' written requested charges.
 "VI. Whether the trial court erred in denying the defendants' motions for directed verdict at the close of the plaintiffs' evidence and at the close of all the evidence."
Rannells principally argues issues going to the sufficiency of the evidence, but he also takes issue with the fact that the trial court read the plaintiffs' requested instructions pertaining to the counterclaim without informing the jury that the instructions applied only to the counterclaim of McArthur and American Coal Energies.
Rule 16 of the Alabama Rules of Civil Procedure (A.R.Civ.P.) reads in part:
 "In any action the court may of its own motion, or shall on timely written notice by any party to the cause, direct and require the attorneys for the parties to appear before it, at least 20 days before the case is set for trial, for a conference to consider and determine [specified matters]."
The appellants contend that the mandatory wording of this rule requires reversal for the trial court's failure to continue the case until a pre-trial conference was conducted with all parties represented at least twenty *Page 18 
days before trial. Our inspection of the record leads to the conclusion that the trial court is not due to be reversed on this ground, chiefly because the appellants did not present substantial reasons for delay to the trial court and have not demonstrated any impediment to their defense resulting from the manner in which the trial court held the pre-trial conference.
When the case was called for pre-trial conference on October 20, 1981, at the regularly scheduled conference twenty days before trial was scheduled to begin, the attorney for McArthur and American Coal Energies requested that the pre-trial conference be held at a later time. There is no indication that he conditioned this request on a continuance of the trial or even that he requested a continuance at that time. He states in brief that he presented his motion for continuance at that time, but elsewhere in brief he states that these defendants filed their motion for continuance on November 4, 1981, and the face of the motion reflects this filing date.[1] In any event, the motion was argued before the court on November 4, and the court entered the above-quoted order on that date.
The court's order states that "From October 20, 1981, until this date, this Court has been available for a pretrial hearing," implying that the defendants had not sought to reschedule the pretrial conference as agreed at the scheduled conference, but had pursued instead their attempt to secure a continuance. The court further stated that "Neither of the attorneys for the parties announced such problems [as to issues that needed resolving or formulating]" at the October 20 hearing. We agree that the continuance was requested without raising specific issues which needed discussion at pre-trial conference. We do not wish to imply that parties requesting a pre-trial conference must show specific reasons why one should be held. We only affirm that under the circumstances of this case, as discussed below, the trial court did not err in refusing to grant a continuance for a pretrial conference.
The case had been pending for over two years and nine months, having been filed in January 1979. Plaintiffs were suing on the note and the suretyship agreement. Defendants raised the defenses and the counterclaim regarding fraud and invalidity of the instruments which introduced complexity into the case. When the case came on for trial on November 9, 1981, all parties announced ready. Plaintiffs put on their case in chief through the testimony of Jerry Guyton, the plaintiffs' attorney at the closing, and Dewel Emerson, one of the plaintiffs. Clearly these were not surprise witnesses and their testimony brought out facts to be anticipated by virtue of allegations made in the complaint and the defense to the counterclaim. The only exhibits offered by plaintiffs were documents of which defendants had reason to be aware, and the defendants did not object to any of them. Plaintiffs put Ray Graham and Dennis Mills on the stand to provide rebuttal evidence; again, these two parties were principals in the events.
The only witness regarding whom the appellants make any claim of surprise was Harry Green, a practicing attorney in Hamilton, where the trial was held. Plaintiffs had asked Guyton what he regarded as a reasonable attorney's fee — both the note and the suretyship agreement allowed for expenses of collection, including a reasonable attorney's fee, in the event of default. Defendants objected to Guyton's testifying as to such fees because of his connection to the case, and the court sustained the objection. After Guyton and Emerson finished testifying, plaintiffs put Harry Green on the stand. Defendants objected to his giving his opinion as to a reasonable attorney's fee, not on the ground of surprise or failure to specify Green as an expert at the pre-trial conference, but on the ground that Green was not properly qualified to give an opinion as to a reasonable attorney's fee for the *Page 19 
collection of such a large note and suretyship agreement. We shall deal with the merits of this objection below. Suffice it to say here that appellants have shown no harmful error in the trial court's action regarding the pre-trial conference and the motion for continuance.
Regarding their second issue, McArthur and American Coal Energies cite a long line of cases, beginning with Tindal v.Bright, 1 Minor 103 (Ala. 1823), holding that sureties who sign on condition that another sign as co-surety are not bound if the cosurety does not sign. O'Neal v. Turner, 230 Ala. 24,158 So. 801 (1935); Birmingham News Co. v. Moseley, 225 Ala. 45,141 So. 689; White Sewing Machine Co. v. Saxon, 121 Ala. 399,25 So. 784 (1898); Smith, Stewart Co. v. Kirkland, 81 Ala. 345,1 So. 276 (1886); Guild v. Thomas, 54 Ala. 414 (1875);Bibb v. Reid, 3 Ala. 88 (1841). They contend, as does Rannells, that McArthur, Rannells, and Morgan signed the suretyship agreement on condition that Harris also sign, and that because there was no evidence that Harris signed the agreement, McArthur and Rannells cannot be held liable.
The plaintiffs do not argue with the above-cited proposition of law, but state that the jury could have found under the evidence either that McArthur and the others did not condition their signature on that of Harris or that Harris did in fact sign. For the former assertion, they point to testimony that McArthur's attorney said to him, "You know if you sign you'll be liable," to which McArthur answered, "I'm aware of that," and signed the agreement. For the latter assertion, the appellees point to Guyton's testimony that Rannells picked up the suretyship agreement from his office and brought it back with a signature purporting to be that of Harris.
While we agree generally with the plaintiffs' argument, we find an even more telling circumstance supporting the jury verdict. In Smith, Stewart Co. v. Kirkland, supra, the elder Justice Somerville, writing for the Court, noted two modifications of the rule that a surety is not liable where an instrument is delivered in violation of
 "the express condition that other named persons should join as sureties in its execution prior to such delivery: . . . (1). It does not apply to commercial paper which has come into the hands of a bona fide purchaser before maturity, who is without notice of the condition [citations omitted]. (2). It does not apply where the surety, having knowledge or notice of the delivery of the bond, suffers the principal to act under it to the prejudice of the obligee, so as to waive the condition, and thus estop the surety from insisting on the defense. — Wright v. Lang, 66 Ala. 389."
Id., 81 Ala. at 350-351, 1 So. 276.
Clearly, the second modification or exception to the rule applies under the undisputed facts of this case. While Guyton was holding the executed documents in escrow, the sureties suffered the principal (American Coal Energies) to take over the operation of Bama Coal. They continued to allow American Coal Energies to operate Bama Coal, to the prejudice of the obligees (plaintiffs), after Guyton delivered to Rannells the executed documents transferring ownership of Bama Coal to American Coal Energies. The trial court instructed the jury on essentially this ground:
 "Now, if you find that at the time they signed this agreement, they knew that Robert Harris was not going to sign this agreement, or if you find that after they learned that Robert Harris would not sign it, they did not call this to the attention of the plaintiffs within a reasonable time and went ahead and operated as if the other named individual Robert Harris had signed the agreement, then they would be estopped to assert the defense of their signature being conditioned upon Robert Harris signing that instrument."
There was testimony regarding disputes among the directors of American Coal Energies which would support a finding that McArthur and Rannells knew, either before or shortly after the signing, that Robert Harris would not sign. The record thus *Page 20 
supports a finding that McArthur and Rannells are estopped from asserting that their signatures on the suretyship agreement were conditional.
As to the issue of Harry Green's qualification to testify as to a reasonable attorney's fee, we find no merit in appellants' contention. They assert that due to his short time in the practice of law and the fact that he had never collected on a note in excess of $5,000.00, nor, apparently, on any suretyship agreement, he was not qualified to testify as to a reasonable attorney's fee in this case. The trial court overruled appellants' objections on these grounds and allowed Green to testify. He stated that a fee of fifteen percent would be reasonable.
Appellants cite Hutchins v. Humble Oil and Refining Co.,161 S.W.2d 571 (Tex.Civ.App. 1942), for the proposition that the mere fact that a person belongs to the profession or calling to which the subject matter relates is not enough; he must further show special knowledge as to the very question on which he proposes to give an opinion. We think the proposition sound with regard to complex, specialized, or technical matters. InHutchins, the expert, a geologist, was asked a question relating to oil drainage, an area in which he apparently had no training or experience. Appellants seek to take the principle too far, however; a reasonable amount which an attorney would charge, even for a substantial commercial collection case such as this one, is not such an esoteric matter that a young attorney without extensive experience is unqualified to have an opinion on the subject. Indeed, appellants have scarcely argued that the amount to which he testified, fifteen per cent of the value of the instrument, was so excessive as to show prejudicial error.
We follow the general rule that the trial court has the discretion whether or not to allow a particular witness to testify as an expert, Hagler v. Gilliland, 292 Ala. 262,292 So.2d 647 (1974), and find no abuse of that discretion in this case.
We next address the issues regarding the trial court's charge to the jury. The first is the contention of McArthur and American Coal Energies that the trial court erred to reversal by identifying the plaintiffs' requested charges as such and in failing to incorporate the requested instructions into the body of the charge. Rule 51, A.R.Civ.P., provides that "[t]hose requests marked `given' shall be read to the jury without reference as to which party filed the request." The committee comments to that rule quote a Minnesota case stating that a requested charge "should preferably be incorporated in the appropriate part of the body of the charge so as not to destroy its symmetry." Carlson v. Sanitary Farm Dairies, 200 Minn. 177,273 N.W. 665 (1937).
Appellants cite Alabama Power Co. v. Tatum, 293 Ala. 500,306 So.2d 251 (1975); Park Supply Co. v. Sunki, 386 So.2d 462
(Ala.Civ.App. 1980), cert. denied, 386 So.2d 466 (Ala. 1980); and Hogan v. Alabama Power Co., 351 So.2d 1378 (Ala.Civ.App. 1977), cert. denied, 351 So.2d 1388 (Ala. 1980). None of these cases, however, confronts the issue squarely. In Tatum, supra, the Court observed that the trial court followed Rule 51 by not referring to which party requested the given instructions and commended the trial court for incorporating the written instructions into the body of the charge. In Park Supply Co.,supra, the Court of Civil Appeals reversed because the trial court emphasized an erroneous written requested charge which contradicted a correct portion of the oral charge. While two of the circumstances of emphasis were the trial judge's identification of the charge as requested by the defendant and the failure to incorporate it into the body of the charge, most of the emphasis stemmed from the fact that the trial court called the jury back in when it was pointed out that the trial court had erroneously sent the written requested charges into the jury room. In further instructing the jury, the court again read the erroneous, prejudicial instruction.
In Hogan, supra, the Court of Civil Appeals affirmed, even though the trial court had identified charges as requested by the plaintiff, because
 "in this instance, we will not declare that the trial court's action in stating to the *Page 21 
jury which party requested which charge was so prejudicial as to constitute reversible error. Furthermore, we would point out that Hogan did not object to the trial court's labeling the written charges which were given as being requested by one party or the other until he filed his brief, hence his objection was made too late."
Id., 351 So.2d at 1386. We note in the same vein the more recent case of Alabama City Bank of Gadsden v. Vaughn,413 So.2d 1053, 1056 (Ala. 1982), wherein this Court observed,
 "While it is true that Rule 51, ARCP, very plainly provides `[t]hose requests marked "given" shall be read to the jury without reference as to which party filed the request,' and we note that its violation could constitute reversal, depending upon the facts of each case, it is also true that the bank once again did not timely object to the trial court's labeling of the written charges as per Rule 51, ARCP." (Emphasis added.)
In this case the appellants objected to the trial court's identifying the plaintiffs' charges as being requested by the plaintiffs, so we address the question of whether this deviation from proper procedure was so prejudicial as to require reversal.
The court gave its oral charge, then plaintiffs' requested instructions, then Rannells's requested instructions, and then McArthur's requested instructions. At the outset of each of these groups of instructions the court simply said "Now, the plaintiff [or "the defendant Gerald Rannells" or "the defendant Shirl McArthur"] has requested that I give some charges to you which also state correct propositions of law and I'll read them to you." At the end of its reading of the written requested charges the trial court stated, "Of course, you are to take these charges along with the general charge that I gave you." Thus, there was no emphasis on the written requested charges, as there was in Park Supply Co. v. Sunki, supra, other than the failure to incorporate the charges into the body of the oral charge without identifying them. We are not able to say that this worked such a prejudice in itself to the defendants as to require reversal.
Nor are the charges themselves erroneous as McArthur and Rannells claim. We shall respond to McArthur's objections first.
McArthur argues that the trial court erred in giving plaintiffs' written requested charges 11, 12, 13, 14, 15, and 16. These charges relate to affirmance of a contract after discovery of fraudulent inducement or breach. McArthur argues first that each of these charges was abstract, without being hypothesized on the evidence or instructing the jury of its relation to the issues being litigated. He cites Bagley v.Grime, 283 Ala. 688, 220 So.2d 876 (Ala. 1969), and AmericanFire and Casualty, Inc. v. Bryan, 379 So.2d 605 (Ala.Civ.App. 1979), as holding that such instructions are erroneous. In these two cases this Court affirmed the refusal of charges — in Bagley, on the ground that a charge "which merely states a general proposition of law without being hypothesized upon evidence, or which does not instruct the jury of its relation to the issues being litigated, may be refused without error."Id., 283 Ala. at 694, 220 So.2d 876, citing cases.
It is a different matter to reverse a trial court for giving requested charges attacked as being abstract, especially in view of the practice under Rule 51 of reviewing the written charges in the context of the charge as a whole:
 "Stated otherwise, we will review alleged error in the giving of a written requested charge in the same context as if such charge were a part of the oral charge; and, as we have stated many times, where the objected to portion of an oral charge is misleading, abstract, or incomplete, we will adjudge error to reverse only if we conclude that prejudice resulted from the giving of such charge in light of the entire instruction." (Citation omitted.)
Alabama Power Co. v. Tatum, supra, 293 Ala. at 505,306 So.2d 251.
The trial court, in its oral charge, instructed the jury as to the appellants' *Page 22 
fraud defense. The charges to which appellants objected variously state the principle that the right to rescind or avoid a contract obtained by fraud may be waived if the party does what amounts to a recognition of the contract after discovery of the fraud. The plaintiffs included statements relating the principles of law to the facts of the case with some of these charges, but the trial court did not read these statements. Nevertheless, the fraud issue was clearly joined and we do not see that the instructions were abstract or confusing in the context of the charge as a whole.
McArthur complains about the statement in charge 13, that to rescind a contract on account of fraud, a party must promptly disaffirm and return or offer to return the consideration. He claims this is error for failure to instruct on impracticality of returning the consideration or lack of necessity of returning valueless consideration, citing Standard TiltonMilling Co. v. Mixon, 243 Ala. 309, 9 So.2d 911 (1942). This argument overlooks the fact that there was no evidence of any attempt to disaffirm, with or without an effort to return the consideration. Moreover, Rannells was still trying to collect on the letter of credit at the time of trial. While there was some dispute as to the value of this letter and of the coal stockpile, there was no evidence justifying an instruction on impracticality of return because either could have been returned to the plaintiffs if the appellants had sought to avoid the contract on the basis of fraud. Similarly with the Bama Coal equipment: it was repossessed, but not until well after appellants had notice of the alleged fraud and had tried to pay off the Bama Coal debts, thus affirming the transaction.
Finally, McArthur challenges the instructions as requiring the American Coal Energies group to take affirmative action to rescind before they could raise the defense of fraud. He states that discovery of the fraud subsequent to the original treatment of the contract as being in force and effect would be a good ground of defense but precluded by these instructions. The record clearly shows, however, that the American Coal Energies group knew the facts constituting the alleged fraud within a month or two of the March 1976 purchase. Plaintiffs filed suit in January of 1979. This allegation of error has no merit.
Rannells complains that the plaintiffs submitted the above instructions as charges to the defendants' counterclaim but the trial court did not submit them as such nor inform the jury that Rannells had not filed a counterclaim. The charges related equally to Rannells's fraud defense to the suit on the note and suretyship agreement, so this presents no error.
McArthur and American Coal Energies argue that their motion for directed verdict should have been granted because the promissory note defines "default" as requiring written notice that a payment is 30 days past due and plaintiffs proved no such written notice. They also argue that the suretyship agreement required a demand for payment and none of the plaintiffs made such demand. These arguments carry no weight when the evidence showed that the only payment made on the note was in May 1976 and the plaintiffs attempted to secure payment up until they filed suit in January 1979. There was evidence that McArthur told the plaintiffs that if they did not file suit he would pay them soon. The purpose of these provisions requiring notice of default and demand for payment was served, and appellants cannot escape liability on this ground.
Rannells similarly argues that his motion for directed verdict should have been granted because the plaintiffs did not present a prima facie case. He claims that the plaintiffs did not prove transfer of ownership of Bama Coal stock or assets. In the face of proof that American Coal Energies treated these items as its own, this argument is specious. Rannells also argues that the trial court should have granted his motion for new trial because the verdict was against the great weight and preponderance of the evidence. As the above discussion shows, there was conflicting evidence; *Page 23 
the evidence in favor of the plaintiffs was sufficient to support the jury's verdict.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] The certificate of service at the end of the motion bears the date "October 4, 1981," but the motion is marked "filed 11-4-81." Counsel does not claim that he actually served the motion on October 4.