John Spears was charged in a two-count indictment that on or about October 11, 1984, the defendant did possess pentazocine, a controlled substance, in violation of § 20-2-70, Code of Alabama 1975. Count two of the indictment stated that on or about October 11, 1984, the defendant did possess marijuana, a controlled substance, in violation of § 20-2-70, Code of Alabama 1975. He was convicted on both counts by a jury on November 20, 1985 and sentenced to 15 years in the state penitentiary.
Samuel L. Cochran, a Mobile police officer, testified that he stopped the appellant while he was driving a car near the intersection of Douglas and Michigan Avenues. He stopped the vehicle after recognizing the passenger as being a fugitive wanted by the State of Florida.
After he exited his vehicle he observed the appellant's shoulder turned at an angle as if his arm were extended down into the vehicle. When Cochran approached the driver's side of the car, he asked the driver to let him see his hands. At that point the driver produced a driver's license and a small brown envelope which Cochran discovered contained some marijuana.
Then the officer frisked him and placed him in another police car. The officer then looked under the driver's seat in the car and found a white envelope which he discovered contained pentazocine and PBZ pills. The appellant told Officer Cochran that the car he was driving belonged to his girl friend. The car was not registered in the appellant's name. Officer Cochran testified on cross-examination that he would not have had probable cause to search the vehicle if appellant had not volunteered the packet of marijuana.
Sylvia Bryant, the city toxicologist, testified and confirmed that the plant material that Officer Cochran obtained was marijuana and that the envelope contained pentazocine, commonly known as talwin.
The State rested after presenting Officer Cochran and Ms. Bryant. The defense moved for a directed verdict as to the possession of pentazocine on the ground that there was no evidence that the defendant had actual possession or knowledge of the pentazocine and on the ground that defendant was not shown to have exclusive control of the vehicle so as to give rise to a presumption that he constructively possessed the pentazocine. The court denied this motion.
The appellant testified that he did not know that the substances were under the seat of the car and that it was not his car. He testified that he was picking the car up *Page 98 
for his mother who was in the process of buying it. He knew the other passenger of the car because the passenger worked at a body shop where the appellant had had his car repaired in 1979. He did not know that the man was a fugitive. The appellant testified that he picked him up on St. Stephens Road. The fugitive had been hitchhiking and had instructed appellant to drop him off at a spot between Ann and Michigan Avenue. This was where the officer stopped the car. Appellant testified that he did not hand Officer Cochran anything. He said that Officer Cochran told him to get out of the car with his hands up and then instructed him to put his hands down on the car. He testified that Officer Cochran took his driver's license out of his pocket. He said that he did not tell the officer that the car was his girl friend's. He said that he would not have handed the marijuana to the officer because he was on probation for possession of marijuana at the time. The appellant also testified that Officer Cochran asked him to cooperate with him and, if he did not, then he would "make it hard on him". The appellant stated that he met the officer at old Hartwell Field where Officer Cochran gave appellant a list of names "to spy on", but that he did not give the officer the information he wanted.
The State called Officer Cochran in rebuttal. Officer Cochran testified that appellant initiated the conversation and had begged the officer to help him out.
The State rested.
The appellant then renewed a motion, previously made orally, for a mistrial. This motion was based on an incident which occurred during a recess while a majority of the jury members were present.
The court took up a matter with another defendant and, after revoking his bond, removed the other defendant from the courtroom in shackles. This motion was denied.
The previous defense motion for directed verdict as to the pentazocine charge was renewed. This motion was again denied.
During deliberations the jury returned with a question. The foreperson asked whether the belief by the police officer that the passenger in the vehicle was a fugitive and drug dealer justified the search of the car by the officer. The trial judge responded that he had already ruled that the search was proper and that the jury was not to consider this issue.
Defense counsel excepted to the judge's statement that he had already ruled the search to be legal. The jury then reconvened and returned with a guilty verdict.
 I
Appellant contends that the trial court erred in failing to grant its motion for mistrial. Appellant based its motion on the ground that the entire jury venire had been tainted by the action of the court in taking up a matter with another defendant and, subsequently, removing him from the courtroom in shackles while a majority of the jury members were present.
A high degree of "manifest necessity" for the granting of a mistrial must be shown before a mistrial is granted. Woods v.State, 367 So.2d 982 (Ala. 1978); Alabama Code Section 12-16-233
(1975). A trial judge may exercise broad discretion in deciding whether a mistrial should be granted and an appellate court will not interfere with a trial court's decision in such a case absent a clear abuse of discretion. Woods, supra, at 984.
We fail to see how the trial judge's actions in handling this matter involving another defendant operated to the prejudice of the accused. We, therefore, find no clear abuse of discretion in the trial court's denial of defendant's motion for mistrial.Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967); see also,Curtis v. State, 424 So.2d 679 (Ala.Cr.App. 1982) and authorities therein cited.
 II
The appellant asserts that the trial judge fatally prejudiced the deliberations of the jury and committed reversible error in stating *Page 99 
in response to the jury's question on probable cause that he had ruled that the search was proper when, in fact, he had never so ruled. We disagree.
According to Rule 45, A.R.A.P., no judgment may be reversed, nor new trial granted on the ground of misdirection of the jury, unless it appears that the error complained of has probably injuriously affected substantial rights of the parties. By the appellant's own admission (brief of the appellant, p. 12), the issue of the legality of the search was not raised by either party. All of the evidence subject to such a challenge was admitted at trial without objection by the defendant. In light of the foregoing, we fail to see how the judge's statement was fatally prejudicial to this appellant.
The appellant contends that the judge's statement "unduly influenced the jury on the question of guilt or innocence." Since the appellant's "guilt or innocence" turned on the question of whether he, in fact, possessed the controlled substances and it was not for the finder of fact to consider the issue of legality of the evidence (which they had alreadyheard), the judge's statement concerning the search was irrelevant for purposes of the jury's deliberation, and the legal or factual viability of the judge's statement need not be considered.
Furthermore, it is evident from the record that the trial judge's supplemental charge in response to the juror's question was sufficient to remove any confusion that may have existed in the jurors' minds. The exchange which forms the basis of the appellant's argument went as follows:
"JUROR: I have a question.
"THE COURT: Mrs. Jackson are you the —
 "JUROR: Yes, is the fact that the passenger of a car was a believed fugitive and drug dealer, does that warrant searching the car?
 "THE COURT: I don't want you to concern yourself with the search. That's a legal matter, and the court ruled that the search is proper, so you can't concern yourself with that. . . .
"JUROR: That answers my question.
 "THE COURT: Okay. For your purposes you must determine whether or not the defendant is guilty of possession of it, the search notwithstanding." (R. 53) (emphasis added).
The judge's explanation was sufficient as far as the juror was concerned. We cannot presume, as appellant argues in his reply brief, that the juror's response indicated that the jury attached "great significance" to the trial judge's "ruling". (Reply brief of appellant, p. 1).
"When reviewing the propriety of a trial court's jury charge, this Court must consider the charge as a whole, in its totality, without isolating statements, which individually may appear prejudicial, from the context in which they were made."Johnson v. State, 399 So.2d 859, 865 (Ala.Cr.App. 1981). See also, Peterson v. State, 452 So.2d 1372 (Ala.Cr.App. 1984);Alabama Power Company v. Tatum, 293 Ala. 500, 306 So.2d 251
(1975). As long as combined directions in original and supplemental charges accurately present the controversial pointof law, ordinarily no reviewable error exists. United States v.Sanfilipo, 581 F.2d 1152 (5th Cir. 1978).
In United States v. Stephens, 569 F.2d 1372 (5th Cir. 1978) cited by the appellant, the Court of Appeals held that the judge's supplemental definition of the word "knowingly" was incorrect and misleading and ordered a new trial. The appellant had been convicted of selling a motor vehicle, knowing it to be stolen. In response to a juror's question as to whethersuspicion that a vehicle was stolen was equivalent to knowledge, the judge gave an erroneous, impromptu answer based on a reasonable person standard.
This case is distinguishable from the case at bar in that the appellant's state of mind in the Stephens case was an essential element of the crime charged and was a question of fact to be determined by the jury in reaching its verdict. In the present case, *Page 100 
the alleged erroneous statement by the judge did not concern a question to be determined by the trier of fact.
Furthermore, we simply cannot equate the misstatement of the judge in Stephens with that alleged in the present case. InStephens, there were no instructions given which effectively balanced the misleading instruction. Stephens, supra, at 1374. Such is not the case here. See also, United States v.Sanfilipo, supra; United States v. Jewell, 532 F.2d 697 (9th Cir.), cert. denied, 426 U.S. 951, 96 S.Ct. 3173,49 L.Ed.2d 1188 (1976).
 III
The appellant contends that the trial court erred in failing to grant his motion for judgment of acquittal as to count one of the indictment charging possession of pentazocine. The appellant argues that the mere presence of the appellant in an automobile containing contraband is not sufficient to support a conviction for possession of a controlled substance and that the State must introduce additional evidence from which appellant's unlawful possession may be inferred and his knowledge of the presence of the substance must be proved beyond a reasonable doubt.
We believe that the trial court committed no error in denying appellant's motion for directed verdict. The evidence was sufficient for the jury to infer appellant's guilt in possessing pentazocine.
"While mere proximity to contraband is not enough to establish constructive possession, where other circumstantial evidence is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support a finding of guilt on such charges." German v. State,429 So.2d 1138, (Ala.Cr.App. 1982). "The kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case." Cason v. State, 435 So.2d 200
(Ala.Cr.App. 1983). Here, the appellant was driving the car and the pentazocine was found under the driver's seat of the vehicle. These facts in conjunction with other surrounding circumstances testified to by Officer Cochran permit a reasonable inference of knowledge and possession. See Fields v.State, 333 So.2d 861 (Ala.Crim.App. 1976) and authorities cited.
Johnson v. State, 444 So.2d 891 (Ala.Cr.App. 1983), and ExParte Story, 435 So.2d 1365 (Ala. 1983), on remand,435 So.2d 1367, cited by appellant, are factually distinguishable. InJohnson the drugs were found in a patrol car in which the defendant had been sitting and in Ex Parte Story the drugs were found in an automobile in which the defendant had merely been a passenger, having only just met the driver of the vehicle prior to the time the drugs were discovered.
We have examined each issue raised by the appellant in brief. We find no error and, therefore, this cause is, hereby, affirmed.
AFFIRMED.
All the Judges concur.